UNITED STATES of America,
Plaintiff–Appellee,

v.

Frederick W. BAUER, Defendant–
Appellant.

No. 90–1840.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 1992.

Decided Feb. 10, 1992.

John W. Vaudreuil, Asst. U.S. Atty. (argued), Patrick J. Fiedler, U.S. Atty., Madison, Wis., for U.S.

Katherine M. Lunsford (argued), Foley & Lardner, Madison, Wis., Thomas L. Shriner, Jr., Foley & Lardner, Milwaukee, Wis., for Frederick W. Bauer.

Before FLAUM, EASTERBROOK, and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

Frederick Bauer represented himself at trial—poorly. He was convicted on drug charges and sentenced to 30 years' imprisonment. He contends that appointed counsel would have been a boost; the obstacle is the court's finding that Bauer could have afforded a lawyer.

In 1987 Bauer sent to a lender a financial statement showing about $400,000 in net assets. Late in 1988 Bauer gave the probation office in another case a financial statement showing $500,000 in net assets. Bauer concedes that both statements were correct. In this case, however, Bauer submitted an affidavit stating that he no longer has the assets (currency, gold, jewels, and coins) that he had listed on the financial statements, that accounts receivable had become worthless, and that the tax collector has priority in what remains. A magistrate judge held a hearing to determine whether, in the language of the Criminal Justice Act, 18 U.S.C. § 3006A(b),

Bauer was "financially unable to obtain counsel".

What happened to the assets? Bauer related that they were no longer in his "immediate reach" and were not "fluid". They had been sold in "[d]ifferent places" to "different people". What of his bank accounts? These were in "different places. California and Wisconsin and Minneapolis." Which banks? "I don't know." Where were his financial records? They were stored in "[d]ifferent places in California and Wisconsin". Who had them? "Different people". Would Bauer authorize the government to look at these records? He would think about it. The magistrate judge concluded that Bauer could retain counsel if he wanted and that his testimony was "ambiguous, evasive and in many respects completely incredible."

Following up on this hearing, the prosecutor sent Bauer forms that would authorize the custodians to reveal his financial records. The forms were never executed. Later the prosecutor proffered the results of an investigation by the FBI; an agent concluded that Bauer had traceable assets of $544,000. The district judge approved the magistrate judge's conclusion that Bauer could afford counsel. Protesting that he could not, Bauer represented himself at trial.

We appointed counsel to represent Bauer on appeal. His principal argument is that because of the asymmetric costs of error, courts should appoint counsel whenever a defendant claims to be unable to afford a lawyer. An error in appointing counsel costs the government a pittance; an error in denying the request for counsel may cost the accused many years in prison. Under a regime of appointment on request, the defendant always receives his constitutional and statutory entitlements if, as he contends, he cannot afford counsel. If the prosecutor is right in believing that the defendant has assets, the United States will be able to seize them in recompense for the outlay to the lawyer. 18 U.S.C. § 3006A(f). No costs of error, and none of the wrangling that accompanies cases such as this.

■■■ As an original matter appointment of counsel on request has some attractions, although the balance is not so lopsided as Bauer supposes. Defendants may hide their assets, as the prosecutor believes Bauer has done—to avoid paying the $250,000 fine and back taxes if not to reduce the expense of legal representation. When the assets vanish, the accused receives the benefit of counsel while thwarting the government's effort to collect. At all events, this is *not* an original matter. The Criminal Justice Act governs. It provides for the appointment of counsel when the judge is "satisfied after appropriate inquiry that the person is financially unable to obtain counsel". 18 U.S.C. § 3006A(b). It is not enough to *claim* inability to hire a lawyer and back up the claim with an affidavit; the statute provides for "appropriate inquiry" into the veracity of that claim. "The burden of proving inadequate financial means ... lies with the defendant." *United States v. Sarsoun*, 834 F.2d 1358, 1361 (7th Cir.1987). A decision adverse to the defendant "will not be reversed unless clearly erroneous." *Id.* at 1362. See also *United States v. Binder*, 794 F.2d 1195, 1201 (7th Cir.1986). The decision adverse to Bauer is not clearly erroneous; the magistrate judge listened to Bauer but did not believe him, and Bauer's failure to authorize a review of his financial records speaks loudly.[1] Surely the sixth amendment does not forbid examination of a defendant's financial status, so we may not disregard the statutory approach.

---

1. Bauer observes that we appointed counsel for him on appeal and that in another case the district judge remarked that he was eligible to proceed *in forma pauperis.* We are now inclined to think that appointment of counsel on appeal in this case was not authorized by statute or compelled by the Constitution; our decision on motions papers does not call into question the district judge's decision on a substantial record. As for the district judge's observation: the judge wrote that "[f]rom the affidavit of indigency submitted by defendant, I find that he is indigent by this court's standards." The record in *this* case contains a good deal more than Bauer's affidavit.

■ Bauer's fallback position is that he was entitled to a lawyer at public expense during the hearing convened to inquire into his assets. Without the assistance of a lawyer, the argument goes, how could Bauer establish his entitlement to one? This is a variation of the automatic-appointment position.[2] Under the Criminal Justice Act, the public fisc need not contribute one penny unless the accused first establishes that he cannot afford counsel. Nothing in the statute directs the Treasury to assist the accused in making this demonstration. Our experience is that district judges often appoint lawyers for persons accused of lucrative frauds and drug deals, persons who likely have assets squirreled away. Any bias in the process now used to evaluate requests for counsel runs dramatically in favor of defendants. There is no statutory warrant for procedures that would strengthen defendants' hands and no constitutional compulsion to create them. No legal expertise is needed to participate effectively in hearings under the Criminal Justice Act. Rules of evidence and procedure were not enforced. Bauer told his story; he elected to be vague and withhold access to his financial records; you do not need a legal education to recognize the consequences of such decisions.

■ Last comes a contention that *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), undoes the conviction. *Faretta* holds that a defendant may choose to represent himself at trial but requires warnings about the dangers of self-representation and waiver of the right to counsel. Nothing in this record looks like a waiver under *Faretta*, Bauer reminds us; protesting that he could not pay, he waived nothing. Without a waiver on the record, he could not be tried unless he had counsel. This is still another variation on the automatic-appointment theme. No defendant who insists that he cannot pay for a lawyer can be said to waive his right to counsel. Only in a world of Doublespeak does "I want counsel at public expense" mean "I waive my right to counsel." Thus the state must appoint counsel at public expense whenever the accused asks.

Unfortunately for Bauer, the combination of ability to pay for counsel plus refusal to do so *does* waive the right to counsel at trial. It is waiver by conduct. *Faretta* did not consider such cases and does not exclude the possibility of waiver in this fashion. Doubtless any defendant should be well warned of the dangers before he sets out to represent himself—whether by spurning proffered counsel or by refusing to dig into his pockets. Bauer was warned of these dangers. The magistrate judge found out that Bauer knew nothing of the rules of evidence and procedure, told him that the rules would be enforced against him nonetheless, and warned him that it was accordingly foolish to proceed without counsel. Bauer persisted in his position that he would not retain counsel, because he could not. If the magistrate judge and district judge were right in concluding that Bauer indeed could pay, then the stubborn refusal to do so was waiver by conduct. Although as Bauer observes the magistrate judge did not tell him about the operation of the sentencing guidelines, the catechism in the *Benchbook for United States District Court Judges* § 1.02(3) (1989 ed.) is not part of the sixth amendment. Magistrate judge Groh told Bauer enough to steer any reasonable person away from self-representation. *Faretta* and decisions such as *United States v. Allen*, 895 F.2d 1577 (10th Cir.1990), require nothing more.

AFFIRMED.

---

2. The parties debate whether the hearing is a "critical stage" in the prosecution, which is beside the point. To say that a step is a "critical stage" is to say that the government may not exclude counsel if the accused has one and must provide a lawyer if the defendant cannot pay.

The trial is the most critical stage of all, but it does not follow that the state must supply counsel when the accused can afford legal fees. Until the defendant establishes inability to retain a lawyer, the state need not supply counsel no matter how "critical" the "stage" may be.