UNITED STATES of America, Plaintiff,

v.

Carlos Antonio SANTIAGO–FRATICELLI, Defendant.

Cr. No. 93–036.

United States District Court,
D. Puerto Rico.

March 30, 1993.

Guillermo Gil, Sr. Trial Atty., U.S. Dept. of Justice, Guaynabo, PR, for plaintiff.

Juan E. Alvarez, Asst. Federal Public Defender, San Juan, PR, for defendant.

## ORDER

FUSTE, District Judge.

The government has moved the court to consider whether codefendant, Carlos Antonio Santiago–Fraticelli, is entitled to continue receiving court-appointed counsel benefits under the Criminal Justice Act. At the March 15, 1993, status conference, the government proffered that the defendant has the necessary economic resources to pay for his legal representation. *See Status Conference Order,* Docket Document No. 31, and the government's *Informative Motion,* Docket Document No. 32. At the conclusion of the status conference of March 15, the court ordered the parties to reduce their positions to writing. A hearing on the issue was held on March 29, 1993. The defendant has not filed a motion outlining his position. At the hearing, the defendant did not present any evidence.

During the hearing held March 29, 1993, the court first required the defendant to complete the standard financial declaration form requested of all criminal defendants for purposes of court-appointed Criminal Justice Act legal representation. The magistrate judge who attended this case originally failed to secure such financial declaration before appointing the Federal Public Defender to represent Mr. Santiago–Fraticelli.

The financial declaration completed under oath on March 29, 1993, shows that the only asset is jewelry in the amount of $800 and a gambling liability to the Ambassador Hotel, the Condado Plaza Hotel, and the Ponce Hilton Hotel casinos in the amount of $110,-000. The Pretrial Services report prepared by Pretrial Services Officer José R. López on February 2, 1993, shows that the defendant claimed to have assets in the amount of $102,800, consisting of $2,800 in automobiles and $100,000 in a residential property. The Pretrial Services report also shows that the defendant claimed, on or about February 2, 1993, debts amounting to $80,500, consisting of a $35,000 mortgage over his residential property, credit card debt amounting to $5,500, and a promissory note guaranteed by his house in the amount of $40,000. The Pretrial Services report shows that defendant's reported net worth was approximately $22,300 as of February 1993.

At the March 29, 1993, hearing, the court received the testimony of Special Agent José González, Criminal Investigations Division, Internal Revenue Service, and that of Fernando Feliciano, Special Agent, Drug Enforcement Administration. Mr. Feliciano is the case agent in this particular criminal prosecution. The court received circumstantial evidence to the effect that defendant, Carlos Antonio Santiago Fraticelli, gambled in several casinos during the period December 1989 to December 1992 approximately $9,646,018 as confirmed by cash transaction reports generated by the different hotels and

casinos. In turn, this gambling activity produced cash-out withdrawals, also confirmed by currency transaction reports, amounting to $5,117,997. The defendant was arrested on January 25, 1993. During the thirty-day period prior to his arrest, and as confirmed by currency transaction reports, the defendant transacted business with the Posadas de Puerto Rico Hotel and Casino in the amount of $75,000. On December 17, 1992, the defendant bought $25,000 in chips; on December 24, 1992, he purchased $11,650 in chips. On December 26, 1992, the defendant bought and deposited $40,500 worth of gambling monies through the Posadas de Puerto Rico Hotel and Casino.

The court received in evidence Government's Exhibit 1, which is a summary of currency transaction reports by casino for the years 1989 to 1992. The four-hundred and ten underlying currency transaction reports by casinos were available in court for defendant's examination. Fed.R.Evid. 1006. The defendant disputed, through argument made by his attorney, the ownership of a two-story, four-apartment building located on Méndez Vigo Street, Ponce, Puerto Rico, as well as the ownership of a home in Vista Alegre, Ponce, Puerto Rico. The government has no evidence that the Vista Alegre residence belongs to the defendant. The evidence is only to the effect that he operated out of that residence and that such residence was listed as his home in some currency transaction reports. The Registry of Property seems to confirm his ownership of the Méndez Vigo four-apartment building which the defendant claims does not belong to him.

The evidence received by the court shows that the defendant, Carlos Antonio Santiago–Fraticelli, has used several Social Security numbers, different driver's license numbers, and several combinations of his name in completing currency transaction reports filled out by different casinos as required by the Internal Revenue Service, Department of Treasury.

Based on the above, the court finds that the defendant has failed to meet his burden of proving, through the appropriate financial declarations, that he is entitled to the benefits of government-paid legal representation under the Criminal Justice Act.

## I.

### *The Criminal Justice Act and Court–Appointed Attorneys*

■ The Sixth Amendment of the United States Constitution declares that every criminal defendant shall "have the assistance of counsel for his defence." U.S. Const. amend. VI, cl. 6. In 1964, Congress enacted the Criminal Justice Act (the "Act"), 18 U.S.C. § 3006A, to help facilitate this constitutional guarantee. *See generally Anaya v. Baker,* 427 F.2d 73, 75 (10th Cir.1970). *See also* Fed.R.Crim.P. 44(a) (Right to Assigned Counsel); Local Rule 402.1. Subsection (a) of the Act specifically provides that the United States must bear the expense of counsel "... for any person financially unable to obtain adequate representation...." 18 U.S.C. § 3006A(a). In interpreting this statute, the Second Circuit has ruled that "[the financial eligibility] standard means something less than indigency or destitution." *See, e.g., United States v. Moore,* 671 F.2d 139, 141 (5th Cir.1982); Criminal Justice Act of 1963: Hearings on S. 63 and S. 1057 Before the Senate Comm. on the Judiciary, 88th Cong., 1st Sess. 11 (1963) (statement of Attorney General Robert F. Kennedy) ("[a]dopt[ing] the test of financial inability to secure a necessary part of adequate representation"). *United States v. Harris,* 707 F.2d 653, 660 (2nd Cir.), *cert. denied,* 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983). While a defendant may not need to be indigent to qualify for section 3006A(a) benefits, federal case law has set forth that a *defendant bears the burden* of proving financial inability to retain counsel.

## II.

### *Burden of Proof in Demonstrating Inability to Afford Counsel*

The Act and its legislative history do not establish who has the burden of proof in controversies surrounding a defendant's ability to afford counsel. However, a line of circuit cases beginning with *United States v.*

*Harris,* 707 F.2d 653 (2nd Cir.), *cert. denied,* 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983), has clearly put the burden of proof on defendants to show that their financial situation prevents them from securing adequate counsel. The *Harris* court squarely addressed this question when it found that "the weight of authority [declares that] the burden rests with the defendant." *Harris,* 707 F.2d at 660 (citing *United States v. Peister,* 631 F.2d 658, 662 (10th Cir.1980), *cert. denied,* 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981); *United States v. Anderson,* 567 F.2d 839, 840 (8th Cir.1977); *United States v. Ellsworth,* 547 F.2d 1096, 1098 (9th Cir.), *cert. denied,* 431 U.S. 931, 97 S.Ct. 2636, 53 L.Ed.2d 247 (1977); *United States v. Kaufman,* 452 F.2d 1202 (4th Cir.), *cert. denied,* 405 U.S. 989, 92 S.Ct. 1252, 31 L.Ed.2d 455 (1972)). *See also United States v. Sarsoun,* 834 F.2d 1358, 1361 (7th Cir. 1987) ("The burden of proving inadequate financial means ... lies with the defendant."). The First Circuit has favorably discussed the *Harris* decision and suggested that a district court may use its discretion in assessing whether the record supports a defendant's inability to pay for lawyering services. *United States v. Lyons,* 898 F.2d 210, 216 (1st Cir.1990).

The *Lyons* court also held that a district court may make appropriate financial inquiries to evaluate a "party's alleged inability to pay." *In re James Lyons,* No. 87-8042, (1st Cir. Sept. 10, 1987) at 2 (cited in *Lyons,* 898 F.2d at 216). Circumstantial evidence may certainly be used by a court in determining a defendant's financial status. *See United States v. Deutsch,* 599 F.2d 46, 48–49 (5th Cir.), *cert. denied,* 444 U.S. 935, 100 S.Ct. 283, 62 L.Ed.2d 194 (1979); *United States v. Bauer,* 956 F.2d 693, 695 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 234, 121 L.Ed.2d 169 (1992). In fact, a court may infer financial ability to afford an attorney on a showing that defendant, without adequate explanation, had substantial assets three years prior to the relevant adjudication. *Deutsch,* 599 F.2d at 48–49. Other circumstantial evidence that courts have considered in determining financial eligibility includes the amount of bail posted, *see* VII *Guide to Judiciary Policies and Procedures: Ap-*

*pointment of Counsel in Criminal Cases* ¶ 2.04 at 2–11 (1987); monies given to defendant for other purposes, *see Bridges v. United States,* 588 F.2d 911, 912 (4th Cir.1978); the possibility that defendant has "secreted" funds, *see United States v. Rubinson,* 543 F.2d 951, 964 (2nd Cir.), *cert. denied,* 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976); possible financial assistance from a spouse, *see United States v. Caudle,* 758 F.2d 994 (4th Cir.1985); income from trusts or estates, *see United States v. Schmitz,* 525 F.2d 793, 794–95 (9th Cir.1975), and whether defendant's financial statements lack credibility. *See United States v. Binder,* 794 F.2d 1195, 1202 (7th Cir.), *cert. denied,* 479 U.S. 869, 107 S.Ct. 234, 93 L.Ed.2d 159 (1986).

## III.

### *Discussion of Santiago–Fraticelli's Ability to Afford Counsel*

Defendant Santiago–Fraticelli has not fulfilled his burden in demonstrating his financial need for court-appointed attorney benefits pursuant to the Criminal Justice Act. First, according to one view of the facts, defendant's net worth falls somewhere in the range of defendant's claimed negative worth to Pretrial Services' $22,300. This clash of facts foreshadows our determination that defendant has not met his burden of showing his inability to afford counsel, and brings us to our second point of interest: the circumstantial evidence involving defendant's gambling record and apartment-building ownership.

Given that defendant bears the burden of proof, the fact that defendant has recently made *unexplained* currency transactions in gambling establishments throughout the country in the sum of *millions of dollars* forces this court to question defendant's claimed financial status. The court may make credibility judgments in resolving this question, *see Binder,* 794 F.2d at 1202, and consider other circumstantial evidence impacting on a determination of defendant's ability to pay. *See Bauer,* 956 F.2d at 695. Other circumstantial evidence in the record gives the court pause in allowing defendant to continue to enjoy court-appointed counsel

privileges paid for by public funds. For example, defendant's probable ownership of a four-apartment building remains unaddressed with facts sufficient to meet defendant's burden of showing that the Registry of Property's information is wrong. Moreover, defendant's use of false personal and tax identification numbers in transacting large sums of money draws the court's attention to defendant's incredibility.

Since defendant retains the burden of proving his inability to afford counsel and yet numerous legitimate questions remain as to whether defendant is indigent or wealthy, this court must order the Federal Public Defender to halt his representation of defendant.

This order will be notified personally to the defendant. Assistant Federal Public Defender Juan E. Alvarez is entrusted with the responsibility of visiting the defendant immediately and explaining the meaning of this determination. The defendant will retain counsel **on or before April 9, 1993.** Mr. Alvarez will remain ready to assist the defendant in this endeavor until discharged by the court. Retained counsel will be advised of all relevant court settings, including those contained in our handwritten minute order of March 15, 1993, Docket Document No. 31. The next status conference remains set for **April 16, 1993, at 4:00 P.M.**

**IT IS SO ORDERED.**