

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-22-2004

# Fischetti v. Johnson

Precedential or Non-Precedential: Precedential

Docket No. 02-4026

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Fischetti v. Johnson" (2004). *2004 Decisions.* Paper 270.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/270

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT

———

No. 02-4026

———

VINCENT FISCHETTI,

Appellant

v.

PHILIP JOHNSON;
GERALD J. PAPPERT[*]

———

On Appeal from the
United States District Court
for the Western District of Pennsylvania
(Dist. Ct. No. 02-cv-00931)
District Judge:
Honorable Gary L. Lancaster

———

Argued March 24, 2004

Before: ROTH, AMBRO, and
CHERTOFF, *Circuit Judges.*

(Filed: September 22, 2004)

———

[*] Pursuant to Fed. R. App. P. 43(c)

CHRISTINE H. NOONING (Argued)
P.O. Box 100087
Pittsburgh, PA 15233

*Counsel for Appellant*

STEPHEN A. ZAPPALA, JR.
District Attorney

MICHAEL W. STREILY
Deputy District Attorney

RONALD M. WABBY, JR. (Argued)
Assistant District Attorney

Office of the District Attorney
401 Allegheny County Courthouse
Pittsburgh, PA 15219

*Counsel for Appellee*

———

OPINION OF THE COURT

———

CHERTOFF, *Circuit Judge.*

Vincent Fischetti appeals a final order of the District Court denying his petition for habeas corpus. Fischetti argues, *inter alia*, that he was denied his Sixth Amendment right to counsel when he was tried in state court without representation by an attorney. Before facing trial for the second time on burglary charges, Fischetti declared to the state trial judge that he wanted to fire his appointed counsel—his third—and postpone proceedings so that new counsel could be named. The judge gave Fischetti the

1

choice of continuing with his appointed attorney, having the appointed attorney assist as co-counsel, or representing himself. When Fischetti refused all options, the state trial court determined that Fischetti was capable of representing himself and had him proceed pro se. Fischetti was convicted of thirty-eight counts of burglary.

This case presents two principal issues:

First, when a criminal defendant unreasonably rejects appointed counsel and also rejects the option of proceeding pro se, is it proper for the trial court to force that defendant to represent himself?

Second, if the correct course for the trial court here would have been to compel Fischetti to continue with his appointed counsel, was the court's actual decision to compel the defendant to proceed without counsel "contrary to . . . clearly established federal law, as determined by the Supreme Court of the United States" or an "unreasonable application" of that law, so that habeas relief under 28 U.S.C. § 2254(d)(1) is authorized?

We conclude that the state trial court should not have compelled Fischetti to represent himself. We also conclude, however, that the trial court's decision did not violate clearly established federal law as established by the Supreme Court and did not unreasonably apply that law.

We are compelled to reverse the District Court's judgment in part on one other ground, however. The state court's admission of prior testimony without a preliminary determination that the witnesses were unavailable for trial infringed on Fischetti's Sixth Amendment right to confront witnesses. We will remand the case to the District Court for further proceedings on this ground alone.

I.

This appeal caps a long and circuitous litigation that has spanned over twenty years in Pennsylvania state court and federal court. On May 6, 1981, Fischetti was convicted by a jury in the Court of Common Pleas, Allegheny County, Pennsylvania, of one count of resisting arrest and a total of forty-three counts of burglary. He was subsequently sentenced to twenty-two and one-half years to two hundred and twenty years of imprisonment. Over the next three years, Fischetti filed a series of appeals and post-conviction hearing petitions contesting his 1981 conviction in Pennsylvania state court. Fischetti filed his first pro se petition for habeas corpus in District Court in 1984, which was dismissed the following year.

On March 13, 1991, Fischetti filed his second pro se motion for post conviction collateral relief. Attorney Ralph Karsh was appointed as Fischetti's second counsel. In November of 1992, Karsh filed a petition to withdraw as counsel, citing irreconcilable differences. The trial court appointed Thomas Fitzgerald to represent Fischetti in post-conviction proceedings. A series of hearings was held before the trial court,

and on December 21, 1993, the trial court granted the relief requested in the post-conviction petition, dismissed three of the burglary charges, and granted a new trial on the remaining counts. The case was assigned to the Honorable Raymond A. Novak for trial. On June 12, 1994, Fischetti filed a pro se petition to dismiss his second court-appointed counsel, Fitzgerald, and to have new counsel appointed. On June 15, 1994, Fischetti filed a pro se petition to Dismiss Pursuant to Pennsylvania Rule of Criminal Procedural 1100.

In the following months, the trial court and Superior Court of Pennsylvania reviewed the blizzard of motions filed by Fischetti, which were each denied in turn.[1]

On November 18, 1994, Fischetti appeared in trial court, refused to agree to a trial date, and asserted that he did not want Fitzgerald to serve as his counsel. That day, Judge Novak sent a letter to Fischetti rejecting Fischetti's complaint that Fitzgerald was not acting in his best interest. On December 29, 1994, Judge Novak denied Fischetti's request for new counsel and gave him three choices: continue to have Fitzgerald represent him, represent himself with Fitzgerald assisting as co-counsel, or represent himself without co-counsel. Fischetti refused the first two options and claimed that he could not represent himself. Judge Novak determined that Fischetti was capable of representing himself and set the trial date for April 3, 1995. Meanwhile, in the midst of these proceedings, Fischetti filed a pro se Petition for Writ of Habeas Corpus in United States District Court on December 20, 1994. On March 14, 1995, the District Court dismissed his petition and denied a certificate of probable cause.

On May 1, 1995, a jury trial began before Judge Novak. Throughout the proceedings, Fischetti sat mute in protest of the court order that he proceed pro se. On May 5, 1995, he was found guilty of thirty-eight counts of burglary. He received a sentence on two of the counts totaling twenty to forty years of imprisonment.[2]

_____

[1] On August 30, 1994, the trial court denied Fischetti's May 5, 1994 Motion to Dismiss for Double Jeopardy. The following month, Fischetti filed a Notice of Appeal contesting that order, both pro se and through counsel, in Superior Court. On November 10, 1994, the Superior Court deemed the appeals frivolous. Two months earlier, on September 19, 1994, the Superior Court also denied Fischetti's September 2, 1994 pro se motion for Emergency Order of Court Dismissing Appellant from Custody of Allegheny County Court under Rule 1100 or in the Alternative Immediately Order Allegheny County to Hold Evidentiary hearing. Fischetti also filed a pro se Writ of Mandamus with the Supreme Court on September 27, 1994. The Supreme Court denied the petition on

_____

December 12, 1994.

[2] Sentence was evidently not imposed on the other counts.

Fischetti filed a series of appeals contesting his conviction, some pro se and some through his former counsel Fitzgerald[3], as well another appointed counsel, Helen Lynch. On December 30, 1997, the Superior Court affirmed the judgment of the trial court. The Supreme Court of Pennsylvania denied Fischetti's petition for Allowance of Appeal on June 28, 1998. On February 1, 1999, Fischetti filed a pro se Motion for Post Conviction Collateral Relief. In the following months, three more new attorneys were appointed for Fischetti; his first and second court-appointed appellate attorneys withdrew. On June 21, 2000, the trial court entered an order dismissing Fischetti's petition. Fischetti timely filed a notice of appeal with the Superior Court, which affirmed the judgment of the trial court on June 21, 2001. On March 20, 2002, the Pennsylvania Supreme Court denied Fischetti's petition for appeal.

On May 22, 2002, Fischetti filed, through counsel, his habeas petition in the District Court. On September 30, 2002, the District Court issued an order adopting the Magistrate's Report and Recommendation to dismiss Fischetti's petition and to deny a certificate of appealability. This appeal followed. We granted a certificate of appeal on the following questions: (1) "whether appellant was denied his Sixth Amendment right to counsel when the second trial court required appellant to represent himself at trial" and (2) "whether the remaining three claims . . . should properly be considered defaulted, as procedural mistakes during the second trial, when appellant acted as his own counsel, appear to be the basis of the procedural default for all three remaining claims."

## II.

### A.

The thrust of this appeal is Fischetti's claim that he was denied his Sixth Amendment right to counsel at trial when he was not granted new appointed counsel and was left to represent himself. Although we hold that error was committed, it was not error of a magnitude to warrant vacating the conviction on our habeas review.

Fischetti placed the trial court in an untenable position when, on the eve of trial, he refused to continue with his then-current counsel in any capacity and also refused to represent himself. This action was part of a pattern of uncooperative conduct through which Fischetti repeatedly complained about counsel and sought to delay or derail his second trial. The trial court investigated Fischetti's complaints about his appointed counsel and determined them to be unfounded.[4] Fischetti nevertheless expressed

---

[3] Fitzgerald was re-appointed as counsel on June 29, 1996.

[4] Indeed, the state judge specifically concluded that his counsel Fitzgerald was well prepared and a "well-trained, skilled defense attorney." (App. 32).

unwillingness to have his competent and diligent third appointed counsel continue in any capacity and sought to postpone the aging case once again. Worse, he offered the judge no assurance that a fourth appointment of counsel would finally satisfy him.

The trial judge refused to appoint new counsel. This was understandable.

A defendant's right to counsel is not without limit and cannot be the justification for inordinate delay or manipulation of the appointment system. United States v. McFadden, 630 F.2d 963, 972 (3d Cir. 1980). There is ample precedent for the proposition that the need for an orderly and expeditious trial may require that a defendant proceed with counsel not of his preference. See, e.g., Wheat v. United States, 486 U.S. 153, 164 (1988); Morris v. Slappy, 461 U.S. 1, 12 (1983); Fuller v. Diesslin, 868 F.2d 604, 607 (1989). Faced with this situation, therefore, we have previously held that if the court has "made the appropriate inquiries and has determined that a continuance for substitution of counsel is not warranted, the court can then properly insist that the defendant choose between representation by his existing counsel and proceeding pro se." United States v. Welty, 674 F.2d 185, 188 (3d Cir. 1982). For these reasons, the trial judge properly rejected Fischetti's demand for another appointment of counsel.

The problem lies with what happened next. Fischetti refused to choose either to proceed with current counsel or to proceed alone. Had the judge at that point instructed Fischetti to proceed with current counsel, that decision would be wholly supportable under Morris. See also Wheat, 486 U.S. at 164. But, instead, the trial judge reacted to Fischetti's resistance by ordering him to trial pro se.

Was Fischetti's response a truly voluntary waiver of counsel? The law in this Circuit indicates that it was not. In United States v. Welty, a defendant was denied new counsel and affirmatively chose to represent himself. 674 F.2d at 187. We reversed the conviction because the defendant was not adequately apprised of the consequences of self-representation, and thus his waiver of the right to counsel was not valid. Id. at 194. If it is improper to have a defendant proceed alone when there is a flawed waiver, it follows that it is improper to have him do so when he has not voluntarily waived at all.

The threshold question in determining whether a defendant can proceed pro se is whether he wants to do so. Only after he has "clearly and unambiguously" asserted the right to self-representation does the court move to the next question—whether the choice is "'intelligent and competent.'" United States v. Stubbs, 281 F.3d 109, 118 (3d Cir. 2002) (quoting Buhl v. Cooksey, 233 F.3d 783, 799 (3d Cir. 2000)). For this reason, the State's vigorous contention that the trial judge reasonably determined that Fischetti's "waiver" was knowing is beside the point. In this case, the trial judge's ruling facially acknowledges that

5

Fischetti rejected—rather than asserted—the desire to represent himself. Thus, there was no voluntary waiver in the first place.

Was there another basis, then, to deny Fischetti counsel? To be sure, there are occasions when a defendant can be forced to go to trial without an attorney—when a defendant has forfeited his right to counsel or impliedly "waived it by conduct." In <u>United States v. Goldberg</u>, 67 F.3d 1092 (3d Cir. 1995), we explained that a defendant could lose the right to counsel by physically assaulting his attorney or (in the case of a financially able defendant) refusing to retain any counsel in the first place. We apply this rule of forfeiture not to punish defendants but to preserve the ability of courts to conduct trials. Similarly, under <u>Goldberg</u>, even less serious dilatory behavior, if preceded by an explicit warning, can be treated as an implied waiver of counsel by misconduct. <u>Id.</u> at 1100. Both forfeiture and implied waiver are conceptually distinct from actual waiver. <u>Id.</u> at 1099-1101.

The circumstances here, however, did not meet the standards necessary to establish that Fischetti actually forfeited the right to an attorney or waived his attorney by misconduct. There is no evidence that Fischetti assaulted his current attorney, or made it impossible for any counsel to appear, or even that the attorney wished to be relieved. Since there was an attorney in place, there was no cost to the trial court in simply ordering that he continue. Accordingly, there was

no necessity to mandate that Fischetti forfeit his attorney. By the same token, there is no record that the trial court formally warned Fischetti that his refusal to proceed with his appointed counsel would result in losing counsel altogether. Moreover, Fischetti's failure to choose between counsel and pro se representation does not seem to be "conduct" of the sort that impliedly waived his attorney. To the contrary, this "conduct" was literally ambivalent between the two choices. Thus, implied waiver is simply inapposite.

Where, as here, there was no harm or delay to the judicial process in having Fischetti's court-appointed counsel continue representation, forfeiture was not appropriate under our precedent. And where the defendant chooses neither attorney representation nor self-representation, the default position for the court should be to mandate attorney representation. After all, while there are competing fundamental rights to counsel and to self-representation, "it is representation by counsel that is the standard, not the exception." <u>Martinez v. Court of Appeal</u>, 528 U.S. 152, 161 (2000).

We emphasize that our ruling does not mean that a trial judge is powerless in the face of a difficult defendant who wants neither to proceed with current counsel nor to continue on his own. If the appointment of new counsel is not warranted, it can be denied. If a defendant refuses to proceed with counsel and also refuses to proceed pro se, the proper course is to move forward with existing

counsel. This approach preserves the right to counsel—which is the presumptive default position—while allowing the court to manage the case.

## B.

If this case were a direct appeal, the preceding reasoning would necessitate a reversal, for an erroneous denial of counsel cannot be harmless. Stubbs, 281 F.3d at 121.

But this case arises under 28 U.S.C. § 2254, and we do not review for simple error. The distinction in standard of review makes all the difference.

Under provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d)(1), the writ may issue after a state conviction only if the state court decision being challenged "was [1] contrary to, or [2] involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court amplified on these two bases for invalidating a state conviction on habeas review.

First, "contrary to . . . clearly established federal law" means just that—"'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" Id. at 405 (quoting Webster's Third New International Dictionary 495 (1976)). Moreover, the state court judgment must not merely be contrary to law as articulated by any federal court. It must contradict "clearly established" decisions of the United States Supreme Court alone. Id. This can happen in one of two ways. Either the state court ignores or misapprehends clear precedent or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Id. at 406. In this regard, the Supreme Court has explicitly held that the "state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Mitchell v. Esparza, 124 S. Ct. 7, 10 (2003) (per curiam) (quoting Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)).

Second, an unreasonable application of Supreme Court precedent occurs when a state court applies the correct rule to specific facts in an objectively unreasonable way. Williams, 529 U.S. at 409; see also Mitchell, 124 S. Ct. at 11. A court that unreasonably extends a rule in a new context or, in the alternative, unreasonably fails to extend a rule may also be deemed to unreasonably apply the correct rule. Williams, 529 U.S. at 407. The Supreme Court has not fully fleshed out this "extension of legal principle" approach to § 2254(d)(1). Williams, 529 U.S. at 408-09; compare Rompilla v. Horn, 355 F.3d 233, 240 (3d Cir. 2004) (unreasonable application includes unreasonable failure to extend) with Marshall v. Hendricks, 307 F.3d 36, 51 & n.2 (3d Cir. 2002) (noting the Supreme Court has not definitively

adopted unreasonable extension theory).

Our approach under AEDPA, therefore, requires us to determine what the clearly established Supreme Court decisional law was at the time petitioner's conviction became final. See Marshall, 307 F.3d at 62; Moore v. Morton, 255 F.3d 95, 104-05 & n.8 (3d Cir. 2001). We must then analyze the challenged state decision in light of that decisional law under each of the two prongs of the AEDPA test. Two aspects of this analytic process bear special mention as the relate to this case.

The first aspect is this: When we look to Supreme Court precedent as a touchstone, we must decide the level of specificity at which we decide whether the state decision is contrary to, or unreasonably applies, that precedent. Obviously, if one examines Supreme Court decisions at a broad level of generality, the universe of state decisions that may be contrary to those decisions will expand. For example, it could be said that Faretta v. California broadly established a right to self-representation upon a proper waiver of counsel, and that any subsequent state court decision erroneously upholding a flawed waiver would be contrary to, or an unreasonable application of, Faretta. 422 U.S. 806 (1975). This would plainly prove too much. See, e.g., Nelson v. Alabama, 292 F.3d 1291, 1295-96 (11th Cir. 2002) (holding that relying on implicit Faretta findings to allow pro se representation was not contrary to or an unreasonable application of Faretta). Instead, Supreme

Court jurisprudence addressing § 2254(d)(1) has established that determining the "clearly established" benchmark should be done on a case-specific level.

That requirement of particularity is evident from the ruling in Williams itself. In discussing the "contrary to" decisional law prong of the statute, the majority held a state decision is contrary to a Supreme Court precedent only if it contradicts the precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Williams, 529 U.S. at 406. This language establishes that under AEDPA the Court views its precedents in their particular factual settings. The touchstone precedents are not to be examined by looking to broad pronouncements or generative principles in the opinion. The "materially indistinguishable" test presupposes a fact-specific analysis of the Supreme Court case law. See Moore, 255 F.3d at 107; Jermyn v. Horn, 266 F.3d 257, 281 (3d Cir. 2001)(same).

The "unreasonable application" prong also takes as its point of departure "clearly established" Supreme Court precedent. Not surprisingly, therefore, in analyzing habeas claims for unreasonable application of the law, the Supreme Court has looked at its own baseline precedents through a sharply focused lens. In Price v. Vincent, for example, the Court reviewed a decision of the Sixth Circuit granting the writ to a defendant who alleged a violation

8

of the Double Jeopardy Clause. 538 U.S. 634 (2003). The defendant had been granted a motion for directed verdict during trial, which was entered on the docket; two days later, the judge reversed the ruling and allowed the charge to go to the jury. Id. at 637. The Court of Appeals granted habeas relief on the ground that the state ruling clearly violated the Supreme Court's decision in United States v. Martin Linen Supply Co., 430 U.S. 564, 571 (1977), which held that double jeopardy attaches when the trial judge makes a ruling that "actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." The Supreme Court reversed, noting that even if the state court was wrong, it had distinguished Martin Linen based on reasonable factual differences. 538 U.S. at 642-43.

Indeed, in emphasizing that Supreme Court precedents must be viewed with particularity, we note that in other contexts the Court has held that application of a "clearly established" legal rule is examined narrowly. For example, in the retroactivity context, a decision is viewed as the application of an established "old rule" only if *dictated* by precedent existing at the time the defendant's conviction became final." Teague v. Lane, 489 U.S. 288, 301 (1989) (plurality); see also Beard v. Banks, 124 S. Ct. 2504, 2509 (2004) (precedent must "compel," not merely "support[]" the decision to fall within old rule). And the application of a rule is dictated by precedent only if it applies "a well-

established constitutional principle to govern a case which is closely analogous to those which have been previously considered in the prior case law." Penry v. Lynaugh, 492 U.S. 302, 314 (1989) (quoting Mackey v. United States, 401 U.S. 667, 695 (1971) (Harlan, J., concurring in part and dissenting in part)). This language—"closely analogous"—underscores the specificity that we must employ in reviewing whether a state court has unreasonably applied Supreme Court precedent. See Moore, 255 F.3d at 104-05 (equating the definition of "old rule" under Teague with the definition of "clearly established" law under AEDPA).

We also emphasize a second aspect to our analysis under AEDPA. In determining whether a state decision is an unreasonable application of Supreme Court precedent, this court has taken the view that "decisions of federal courts below the level of the United States Supreme Court may be helpful to us in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent." Marshall, 307 F.3d at 71 n.24; see also Moore, 255 F.3d at 104 n.8. The Supreme Court itself appears to adopt this approach, since it has pointed to decisions of federal and state appeals courts as evidence that an interpretation of Supreme Court precedent was not objectively unreasonable. See Price, 538 U.S. at 643 & n.2. However, we emphasize that cases not decided by the Supreme Court do not serve as the legal benchmark against

which to compare the state decision. At the end of the day, AEDPA "confine[s] the authorities on which federal courts may rely" in a habeas case to Supreme Court decisions. Lewis v. Johnson, 359 F.3d 646, 652 (3d Cir. 2004); see also Dunn v. Colleran, 247 F.3d 450, 457 (3d Cir. 2001); Hameen v. Delaware, 212 F.3d 226, 234-43 (3d Cir. 2000) (analyzing Supreme Court cases).

C.

With these general principles in mind, we review the decision of the state court that ordered Fischetti to proceed on his own behalf when he declined both to proceed with his current counsel and to represent himself. The question here is not whether the state court order was simple error, but whether it was error that contradicted or unreasonably applied Supreme Court precedent.

At the outset, we must articulate the issue presented to the state court precisely. This was not a circumstance in which Fischetti was simply forced to go to trial without counsel or where he received an inadequate waiver hearing under Faretta. Here, Fischetti refused to make a choice between proceeding with current counsel and proceeding pro se. Effectively, he sought to defy the trial court's denial of his motion for yet another new counsel. In essence, the state court treated him not as if he had waived the right to his attorney but as having forfeited that right. See Goldberg, 67 F.3d at 1101-02. We must therefore examine whether there is "clearly established" Supreme Court law

on forfeiture of the right to counsel.

The Supreme Court has on numerous occasions made clear that the right to counsel can only be waived voluntarily and knowingly. McKaskle v. Wiggins, 465 U.S. 168, 173 (1984); Faretta, 422 U.S. 806, 835 (1975); Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942). But the Court's established precedent in this area has not expressly dealt with the matter of forfeiture of counsel, which is the exact issue here. As we have discussed, forfeiture and voluntary waiver are conceptually separate. Moreover, the Supreme Court's prior decisions have not involved facts that are "materially indistinguishable" from the facts surrounding Fischetti's actions in this case. See Williams, 529 U.S. at 406; Moore, 255 F.3d at 107. It follows that the state court ruling here was not contrary to federal law as articulated by decisions of the Supreme Court.

To be sure, the analysis undertaken by the state court, and by the reviewing state appellate court, did not discuss these Supreme Court precedents. That omission, as we have seen, is not dispositive. See Mitchell, 124 S. Ct. at 10. What is important is that the state courts certainly did not contradict or take a position that was explicitly inconsistent with any prevailing United States Supreme Court decisions.

Whether the state court unreasonably applied the Court's precedent presents a closer question,

10

however. Undoubtedly, the Supreme Court has made clear that the right to counsel at trial is fundamental and cannot be actually waived except voluntarily and knowingly. As the Court has observed, there is a "strong presumption" against the waiver of the right to counsel. Patterson v. Illinois, 487 U.S. 285, 307 (1988). And, as we have pointed out above, the assistance of counsel, not self-representation, is the presumptive position. See Martinez, 528 U.S. at 161. Thus, if our role on habeas review were to determine if the state judge properly extrapolated the general principles that can be derived from Faretta, Patterson, and Martinez to this different factual setting, we might disagree with the state court ruling.

That is not our role. In reviewing the reasonableness of the state courts' application of Supreme Court precedent, we must use as our point of departure the specific holdings of the Court's decisions. When assessing whether the state court acted reasonably in applying or refusing to apply that precedent, we must be mindful that the issue is whether Supreme Court law "dictated" a result in our case, Teague, 489 U.S. at 301 (plurality); see Moore, 255 F.3d at 104-05, or whether the circumstances presented here were "closely analogous" to those that formed the basis of earlier high court decisions, Penry, 492 U.S. at 314 (internal quotations and citations omitted).

As we have observed, no Supreme Court case has dealt specifically with the case of a defendant who is unwilling to proceed either with or without counsel because he has been denied the particular counsel of his choice. Accordingly, none of the precedential decisions provides a template that fits the facts here. Nor has the Supreme Court expressly ruled out forfeiture of counsel. Indeed, the Supreme Court has recognized that the parallel rights to counsel and to self-representation cannot be manipulated to frustrate the orderly processes of the trial court. In Faretta, for example, the Court warned that the "right of self-representation is not a license to abuse the dignity of the courtroom." 422 U.S. at 834 n.46; accord McKaskle, 465 U.S. at 184.

More importantly, the Supreme Court has made clear that Sixth Amendment rights generally are not amenable to forfeiture. Through misconduct, defendants can outright forfeit trial rights as fundamental as the Sixth Amendment right to counsel. The Confrontation Clause of the Sixth Amendment for example, guarantees that a defendant can be present in the courtroom throughout a criminal trial. The Supreme Court held in Illinois v. Allen, 397 U.S. 337. 343 (1970), however, that a defendant can lose that right if he is disruptive in court after being warned by the judge. Indeed, the court upheld exclusion notwithstanding the availability of alternative coercive measures that might have served to discipline the misbehaving defendant. Id. at 344-46. Likewise, in Taylor v. United States, 414 U.S. 17 (1973) (per curiam), the Court affirmed a decision to proceed with a trial

11

after a defendant failed to return after a recess. The Court rejected the argument that the absence could not be construed as a knowing waiver in the absence of an explicit warning that the trial would continue if he absconded. It held the trial could continue because the court's power to try a case "'may not be defeated by conduct of the accused that prevents the trial from going forward.'" Id. at 20 (quoting Allen, 397 U.S. at 349 (Brennan, J., concurring)).

These decisions certainly provide a basis to conclude, as the state judge did in this case, that defiant behavior by a defendant can properly cost that defendant some of his Sixth Amendment protections if necessary to permit a trial to go forward in an orderly fashion. This precedent, therefore, cuts against a finding that the trial judge unreasonably applied Supreme Court case law in responding to Fischetti's obduracy by mandating that he proceed without counsel. Additional support for the reasonableness of the state court's application of Supreme Court precedent is found in rulings of other courts, including our own, that uphold at least limited forfeitures of right to counsel. See Price, 538 U.S. at 642-43 & n.2 (relying on other decisions as indications of reasonable interpretation); Moore, 255 F.3d at 104-05 n.8 (same).

As we have already discussed, we confronted forfeiture and waiver by conduct in Goldberg. While we found in that case an insufficient factual predicate to apply either doctrine, we did read the applicable Supreme Court cases as

allowing forfeiture and waiver by conduct of counsel. We cited Illinois v. Allen as approving the decision to "deprive a defendant of a fundamental constitutional right at least where the defendant is aware of the consequences of his actions, but regardless of whether the defendant affirmatively wishes to part with that right." Goldberg, 67 F.3d at 1101. We revisited the forfeiture issue in United States v. Leggett, 162 F.3d 237 (3d Cir. 1998).[5] There, a defendant physically attacked his trial counsel at sentencing. After release from the hospital, counsel understandably sought to withdraw. The district court granted the application and "concluded that Leggett had forfeited his right to counsel for the sentencing hearing." Id. at 240. We affirmed. See also United States v. Jennings, 855 F. Supp. 1427 (M.D. Pa. 1994) (assault on appointed attorney waives counsel "by implication"), aff'd, 61 F.3d 897 (3d Cir.

---

[5] Leggett was decided four years after the state judge in our case ruled that Fischetti must proceed pro se. That fact does not make a difference. As we have discussed, we look to non-Supreme Court cases not because the state court was obliged to rely on them, but as evidence of what courts would view as reasonable interpretations of Supreme Court law. See Lockhart v. Fretwell, 506 U.S. 364, 372-73 (1993) (holding that the Teague rules limiting retroactive interpretation of the law do not apply to changes in the law that would uphold, rather than reverse, a conviction).

1995) (table).

Other circuits have also interpreted Supreme Court decisions to be consistent with forfeiture of the right to counsel. These cases have interpreted the law to require defendants to go to trial unrepresented when they have failed to hire counsel within a reasonable time, United States v. Bauer, 956 F.2d 693 (7th Cir. 1992); United States v. Mitchell, 777 F.2d 248 (5th Cir. 1985), or have abused counsel, United States v. McLeod, 53 F.3d 322 (11th Cir. 1995).

None of these cases approves the specific decision made by the trial judge here. But the appellate cases do establish that the Supreme Court's general right to counsel decisions are reasonably read as qualified by the trial court's power to remedy abuse of that right through forfeiture. Further, none of these cited appellate cases saw in the Supreme Court's precedents any clear guidance as to the precise standard to be applied before forfeiture can be triggered. Put another way, the Supreme Court has not fully defined when a defendant's misconduct or defiance warrants a forfeiture. Our canvass of decisions of our own and sister courts reinforces our view that the state court order that Fischetti proceed without counsel was not an objectively unreasonable application of Supreme Court case law under the Sixth Amendment. Williams, 529 U.S. at 409-10, 412.

The Second Circuit has reached a similar result. In Gilchrist v. O'Keefe, 260 F.3d 87 (2d Cir. 2001), the Court entertained a § 2254 petition brought by a defendant whose counsel was discharged before sentencing after defendant punched counsel in the ear. Although the Court of Appeals indicated that a forfeiture based on one incident might be constitutionally unwarranted, id. at 89, it held that the state courts' decision upholding the forfeiture was neither contrary to Supreme Court cases nor an unreasonable application of those cases. Gilchrist concluded that the Supreme Court's "recognition that other important constitutional rights may be forfeited based on serious misconduct" counsels against a finding that the state court was unreasonable in concluding that the defendant had forfeited his right to counsel by his single act of violence. Id. at 97. We apply the same logic in reaching the result here.

The state court's mandate that Fischetti proceed pro se was error, but was not contrary to, or an unreasonable application of, Supreme Court precedent.

III.

Fischetti raises three other claims. He first claims that his Sixth Amendment right to effective assistance of counsel was violated when his counsel at the first trial failed to argue that probable cause did not exist with regard to his arrest for burglary, theft, and receipt of stolen property. In the alternative, he contends that appellate counsel was ineffective in not contesting the second trial court's failure to hold a hearing on this issue. Second, he claims that his Sixth Amendment right to

13

effective counsel was violated when appellate counsel did not appeal the failure of the court at the second trial to provide him with certain court records and transcripts from the first trial. Finally, Fischetti maintains that his Sixth Amendment right to confront witnesses and right to effective assistance of counsel were denied because the trial court failed to conduct a preliminary hearing on the unavailability of certain witnesses before their prior testimony was read into evidence at his second trial (and appellate counsel did not appeal that failure).

The District Court rejected these claims when adjudicating the original habeas petition. The District Court found that each of these contentions was procedurally barred on independent state law grounds because they were not properly presented to the state courts. Claims barred on state procedural grounds cannot be reviewed on habeas unless the "prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). Cause must be "some objective factor external to the defense." Murray v. Carrier, 477 U.S. 478, 488 (1986).

These claims were presented to the Pennsylvania Superior Court on collateral review and rejected as procedurally barred because they were not raised on direct appeal. Presumably anticipating this result, Fischetti also argued before the Superior Court (and throughout the subsequent state proceedings) that any default on his direct appeal was the consequence of ineffective assistance or the outright denial of counsel at the trial.[6] The Superior Court rejected this excuse, determining that the default ultimately stemmed from Fischetti's failure to raise any of these issues at the second trial. Specifically, the Court found that Fischetti, acting pro se, did not request a suppression hearing regarding the arrest; did not perfect a request for court records; and did not request a preliminary hearing regarding admissibility of testimony from the first trial. We note that the federal law, as well as Pennsylvania law, does not allow pro se litigants to avoid their own waivers on the ground that they were ineffective as "counsel." Faretta, 422 U.S. at 834 n.46; Commonwealth v. Griffin, 644 A.2d 1167, 1171 (Pa. 1994).

Fischetti argues on this appeal that the District Court was incorrect to rely on these omissions at trial as procedural waivers because he unwillingly proceeded pro se. Put differently, he urged in state court and urges here that the trial court's erroneous decision to force him to represent himself provides "cause" to overlook the default of all claims he did not raise pro se at trial.[7]

---

[6] Thus, the ineffective assistance claims themselves were exhausted. See Murray, 477 U.S. at 489.

[7] This was the second question on which we granted a certificate of

14

Attorney error that rises to the level of ineffective assistance under the Sixth Amendment establishes external "cause" to overcome a procedural default. Murray, 477 U.S. at 488; see also Werts v. Vaughn, 228 F.3d 178, 193 (2000). Of course, a defendant who proceeds pro se voluntarily cannot assert a claim of ineffective assistance of counsel. But here, the defendant was erroneously ordered to proceed without counsel. If ineffective assistance of counsel is sufficient to excuse a default, wrongful outright denial of counsel must, *a fortiori*, also be sufficient. Indeed, the Supreme Court observed that a total denial of counsel works greater unfairness than mere ineffectiveness of counsel. Penson v. Ohio, 488 U.S. 75, 88 (1988). Logically, therefore, a waiver caused by an improper outright denial of the Sixth Amendment right to counsel constitutes "cause."

The Supreme Court decision in Coleman v. Thompson itself is instructive in this regard. The Court held there that ineffective assistance of counsel on appeal from a denial of state habeas review was not cause for a procedural default because there was no Sixth Amendment right to

appealability: "whether the remaining three claims in this application should properly be considered defaulted, as procedural mistakes during the second trial, when appellant acted as his own counsel, appear to be the basis of the procedural default for all three remaining claims."

counsel for state habeas. 501 U.S. at 755-56. The majority distinguished that fact pattern from one in which the denial of assistance of counsel occurred at a stage of proceedings during which the Sixth Amendment does apply—that is, at trial or on direct appeal. Id. at 754. In the latter case, because the ineffective assistance of counsel (and *a fortiori* the outright denial of counsel) violates the State's constitutional obligation, the State "must bear the cost of any resulting default and the harm to state interests that federal habeas review entails." Id.

Accordingly, we hold that the constitutionally erroneous denial of counsel to Fischetti constitutes cause sufficient to excuse his procedural default of the claims he raises here. Our ruling is consistent with decisions of other circuits. Shayesteh v. City of S. Salt Lake, 217 F.3d 1281, 1283 (10th Cir. 2000); Restrepo v. Kelly, 178 F.3d 634, 640-41 (2d Cir. 1999).

We pause to address an obvious question: How can the denial of counsel suffice to establish cause to overcome a procedural default when we have already ruled that it is not sufficient as a stand-alone claim to warrant reversal of the underlying convictions? The answer lies in the differing standard for evaluating constitutional error as a substantive basis of relief and as a cause to avoid default of other claims. As we have discussed, AEDPA authorizes the writ of habeas corpus to be granted only for clearly erroneous applications of Supreme Court case decisions. The constitutional error

15

here does not meet this threshold. But AEDPA does not establish a statutory high hurdle for the issue of cause. And the Supreme Court's pronouncement in Coleman applied no AEDPA-style "unreasonable application" test in determining the existence of cause. Rather, it made its determination of cause, or lack of cause, based on a straightforward analysis whether the denial of counsel was "an independent constitutional violation." 501 U.S. at 755. We do so here as well. Our analysis in Part II has established that the state court committed constitutional error in forcing Fischetti to go to trial himself, but that the error was not sufficiently unreasonable under Supreme Court precedent to constitute an independent basis of habeas relief under the threshold requirements of § 2254(d)(1). The constitutional error suffices, however, to establish cause for the procedural default.

Of course, once the petitioner has established cause, he must show "'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982). Such alleged errors must have "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 170; Werts, 228 F.3d at 193. In the context of a substantive ineffective assistance claim, this Court has stated that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." Sistrunk v.

Vaughn, 96 F.3d 666, 670 (3d Cir. 1996).

Fischetti's first claim is that counsel at his first trial rendered ineffective assistance when he failed to challenge the validity of Fischetti's arrest and that the court failed to conduct an adequate suppression hearing. This claim is refuted by the record. As Fischetti's own submission to the District Court asserts, the first trial court did hold a suppression hearing and upheld the validity of Fischetti's arrest. Memorandum in Support for Writ of Habeas Corpus under 28 U.S.S.C. § 2254 at 23-24. Since the validity of the arrest was actually adjudicated after a hearing, the allegations that counsel failed to raise the issue at trial or to secure a hearing are utterly without merit. And once the first trial court adjudicated the issue, the law of the case doctrine eliminated any requirement that the second trial court reconsider the issue. Waldorf v. Shuta, 142 F.3d 601, 616 n.4 (3d Cir. 1998). Therefore, Fischetti has not even established error, let alone prejudice.

Fischetti's next claim, that appellate counsel was ineffective in not appealing the state court's failure to provide him with documents from his previous trial, including court records and transcripts of prior proceedings, also fails. Fischetti admits that the second trial court ordered Fischetti's second counsel to provide him with records but complains there was "nothing in the docket or record to evince that the court ever entered an order directing that all court records in [his] case be turned over to him." Appellant Br. at

16

27. Fischetti has failed to establish what records he did not receive, and what possible effect his failure to receive these records had on his second trial. He has therefore failed to establish prejudice for this claim.

Fischetti's final claim centers on the second trial court's decision to allow some witness testimony from the first trial to be admitted into evidence at the second trial without a preliminary determination regarding the unavailability of those witnesses. A number of burglary victims testified at the first trial, held some fourteen years earlier than the second. According to the record, some victims' testimony from the first trial was admitted in the second trial without any showing that they were unavailable. Fischetti argues that his Sixth Amendment rights were violated because the second trial court's failure to hold a preliminary hearing establishing unavailability violated his right to confront witnesses. He contends, by the same token, that his appellate counsel's failure to contest the admission of this prior testimony on appeal was ineffective assistance of counsel.

The second trial court's failure to hold a preliminary hearing (and appellate counsel's failure to appeal this point) were constitutional error. As the Supreme Court has recently reminded us, under the Sixth Amendment's Confrontation Clause, testimony from an earlier sworn proceeding may not be admitted at a criminal trial if the witness is available. Crawford v. Washington, 124 S. Ct. 1354, 1369 (2004). That proposition was established by the Supreme Court many years ago, well before the trial of this case. See Barber v. Page, 390 U.S. 719, 722-25 (1968). Admitting the prior testimony here without a determination of unavailability was contrary to Barber.

Was this Confrontation Clause violation prejudicial? Although Fischetti was convicted in his second trial of thirty-eight counts of burglary, the record discloses that he was sentenced only on two of those counts. The trial court sentenced Fischetti to ten to twenty years for the burglary of the home of Joseph Kostrub, a victim who did testify at the second trial. The trial court then added a consecutive ten to twenty year sentence for the burglary of the home of Frieda Barnes. However, Frieda Barnes did not testify at the second trial; her testimony was read into the record before the jury.

Since each of these burglaries was distinct, the sentencing on the Kostrub burglary could not have been affected by any error in admitting testimony of victims on separate burglaries.[8] That is not so with respect to the Barnes burglary, however. Absent a determination that Ms. Barnes was not available to appear, it was not proper for Ms. Barnes's testimony to be read to the jury at the trial.

-------

[8] Moreover, since at least nine victims did testify at the second trial, the additional burglary counts without witnesses were akin to "bringing coals to Newcastle."

17

Accordingly, we will reverse and remand the judgment of the District Court only with respect to Fischetti's sentence on the Barnes burglary count. On remand, the District Court may hold a hearing to determine whether Ms. Barnes was unavailable at the time of Fischetti's trial. If she was, then any error will not have been prejudicial after all. If the District Court cannot determine that Ms. Barnes was unavailable, it should consider if the error was prejudicial in light of all the other evidence. If the District Court finds that there was prejudice on this count of the conviction, it should grant the writ as to the Barnes count only with instructions that the state court discharge Fischetti on completion of his sentence on the Kostrub count unless the state court either (1) sentences Fischetti under another count for which there was a victim who testified at trial or (2) retries Fischetti on the Barnes count.