[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 27, 2003
THOMAS K. KAHN
CLERK

No. 01-16904

D. C. Docket No. 00-03432 CV-C-S

WEAVER LEE HAWKINS, IV,

Petitioner-Appellee,

versus

STATE OF ALABAMA,

Respondent-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(January 27, 2003)**

Before EDMONDSON, Chief Judge, WILSON, Circuit Judge, and NANGLE*,
District Judge.

_____

* Honorable John F. Nangle, United States District Judge for the Eastern District of
Missouri, sitting by designation.

EDMONDSON, Chief Judge:

This appeal is controlled by the Antiterrorism and Effective Death Penalty Act (AEDPA). The State of Alabama appeals the district court's order granting Weaver Lee Hawkins's habeas corpus petition. We vacate the order.

BACKGROUND

A Grand Jury indicted Weaver Lee Hawkins for trafficking in marijuana and failure to pay a drug tax. At trial in 1998, Hawkins admitted that he had been driving the vehicle that contained the marijuana but denied that he knew about the drugs.

The prosecutor argued that Hawkins would have known about the marijuana because of its smell. The prosecutor told the jury that they would be able to smell the marijuana during their deliberations. Some of the marijuana, when seized, was contained in a ziplock bag; the rest was wrapped in plastic and placed inside a shoebox. At trial, the marijuana was introduced into evidence in the shoebox; but it was sealed in thick plastic heat-sealed bags from which no smell emanated. The marijuana had been removed from its original wrapping and sealed in these thicker bags at the toxicology lab where it had been sent for testing.

Before the case was submitted to the jury, the prosecutor -- without the knowledge of the court or defense counsel -- went to the court reporter, who had possession of the exhibits, and asked to see the bags of marijuana. He told the court reporter that he wanted the marijuana to be in the same condition that it was in when it was seized so that the jury could smell it. He took the marijuana out of the box, sliced open the bag, placed the marijuana back in the box, and returned it to the court reporter.

After the jury returned a guilty verdict, Hawkins discovered the prosecutor's acts and moved for a new trial. He argued that the opening of the marijuana bag outside the presence of the court and defense counsel was prosecutorial misconduct. The trial court granted the motion for a new trial.

Hawkins then moved to dismiss the indictment on double jeopardy grounds. The trial court denied the motion. Hawkins was retried and convicted of trafficking in marijuana. He was sentenced to 10 years in prison.

Hawkins appealed the conviction, and the Alabama Court of Criminal Appeals affirmed.

In Hawkins's Petition for Post Conviction Relief in the United States District Court for the Northern District of Alabama, Hawkins raised 5 claims. His third claim was based on the denial of his motion to dismiss the indictment on

3

double jeopardy grounds.

The district court concluded that the Alabama Court of Criminal Appeals unreasonably applied clearly established federal law by unreasonably refusing to extend the legal principle of Oregon v. Kennedy, 102 S.Ct. 2083 (1982), to this case. The district court then granted the writ of habeas corpus on double jeopardy grounds only.

DISCUSSION

We review the district court's decision in a habeas corpus case de novo. See Dorsey v. Chapman, 262 F.3d 1181, 1185 (11th Cir. 2001). Our review (and the district court's review) of a state court's decision in a habeas corpus case is governed -- and limited -- by 28 U.S.C. § 2254 as amended by AEDPA. The important part of section 2254 reads this way:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -- (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;

28 U.S.C. § 2254 (d)(1).

4

The Supreme Court instructed us about this statutory test in Williams v. Taylor, 120 S.Ct. 1495 (2000).  The Court said that a state court decision would be contrary to Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Id. at 1519. The Court also recognized that "[a] state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Id. at 1519-20.  The Court then considered what constituted an unreasonable application of clearly established federal law and concluded that "[a] state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case certainly would qualify." Id. at 1520.

Given the circumstances of his trial, Hawkins does not argue that the decision of the Alabama Court of Criminal Appeals was contrary to Kennedy as Williams explains the term.[1]  Nor does he, per Williams, argue exactly that the Alabama court correctly identified the governing rule and unreasonably applied it

---

[1] The district court determined that the Alabama Court of Criminal Appeals unreasonably refused to extend the Kennedy rule to this case.  Hawkins does argue that the state court's decision was contrary to United States v. Dinitz, 96 S.Ct. 1075 (1976), and United States v. Tateo, 84 S.Ct. 1587 (1964).  The expansive language that Hawkins relies on in these opinions was narrowed by the Kennedy decision, and neither of these cases is factually similar to this one. Hawkins's argument for relief on the ground that the state court decision was contrary to Dintz and Tateo is without merit.

to the facts of the case. Instead, he asks us to conclude that the Alabama Court of Criminal Appeals unreasonably applied clearly established federal law by unreasonably refusing to <u>extend</u> the legal principle of <u>Kennedy</u> to this case.

While the Supreme Court, in <u>Williams</u>, considered whether an unreasonable application might include a situation where a state court unreasonably refuses to extend a legal principle to a new context, the Court declined to rule on the issue. <u>Williams</u>, 120 S.Ct. at 1521. The Supreme Court cases that have come after <u>Williams</u> also have not resolved in detail the question of what is meant by extending precedent and when, or if, a failure to extend a precedent would justify relief under AEDPA. <u>See</u> <u>Ramdass v. Angelone</u>, 120 S.Ct. 2113, 2121-2125 (2000)(Justice Kennedy) (rejecting that state court's refusal to extend the Supreme Court's precedent in <u>Simmons v. South Carolina</u>, 114 S.Ct. 2187 (1994) amounted to an unreasonable application of federal law under AEDPA).[2] We only have said,

---

[2] Justice Kennedy's plurality opinion said that a state court decision unreasonably applies clearly established federal law if "the state court was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled." <u>Ramdass</u>, 120 S.Ct. at 2120. This statement does not resolve the issue. We are not sure that it was essential to the decision. We also are not sure what it means precisely. We are uncertain about what is meant by "extend" and by "context." We do know that the opinion ultimately concluded that the state court had not unreasonably refused to extend the governing legal principle, and we do know that the opinion concluded so, in large part at least, because of important factual differences between the state case and the Supreme Court precedent. <u>Id.</u> While we faithfully try to learn what we can from the pertinent words in <u>Ramdass</u>, we also note that the words appear in a plurality opinion which did not receive the votes of a majority of the Court, and the other opinions did not elaborate on the concept of extension. <u>See</u> <u>id.</u> at 2126-28 (O'Connor, J concurring); <u>id.</u> at 2128-43 (Stevens, J dissenting).

6

in dicta, that "a state court decision involves an unreasonable application of Supreme Court precedent 'if the state court . . . unreasonably refuses to extend [a legal] principle [from Supreme Court precedent] to a new context where it should apply." Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000); accord Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001); Breedlove v. Moore, 279 F.3d 952, 961 (11th Cir. 2002). See also Isaacs v. Head, 300 F.3d 1232, 1251 (11th Cir. 2002)(no majority opinion). But our decisions also have not addressed what the concept of extending precedent, for AEDPA purposes, means exactly and when, or if, under AEDPA, a state court would be required to undertake an extension of clearly established federal law.

We believe that the question of when a state court's refusal to extend a legal principle would constitute, under AEDPA, an unreasonable application of federal law comes to us unsettled.[3] But we are confident that Hawkins has failed to show

---

[3] The word "extend" does not appear in AEDPA. So, we need to be careful about reading "extend" into the statute. For us, the biggest problem under AEDPA is how to square the idea of extending the rule of a Supreme Court precedent to new facts with AEDPA which sets out "contrary to, or . . . an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States" as the only limit on state court decision making. "Extend" can mean different things at different times. Compare Brumley v. Wingard, 269 F.3d 629 (6th Cir. 2001) with Alvarado v. Hickman, — F.3d ---, 2002 WL 31829483 (9th Cir. 2002). Extend might only mean to apply the ratio decidendi of Supreme Court decisions fully and completely (and not in some crabbed way) so that the rule of law covers new and different facts and circumstances as long as the new facts and circumstances -- objectively reasonably viewed -- are materially or, put differently, substantially the same that were in the mind of the Supreme Court when it laid down the rule. See 5 The Oxford English Dictionary 594 (2d ed. 1989)(extend . . . to stretch or pull out (anything) to its full size)(emphasis added).

7

See generally Brumley, 269 F.3d at 644. In this sense, we see no conflict between AEDPA and requiring state courts to extend Supreme Court rules. But "extend" in a different sense, can mean to "widen the range, scope, area of application of (a law, operation, dominion, state of things, etc.); to enlarge the scope or meaning of (a word)." 5 The Oxford English Dictionary 595 (2d ed. 1989). See generally Alvarado, 2002 WL 31829483 at *9. In this sense, we see an impermissible conflict with Congress's expressed intent in AEDPA.

We reject that Congress intended for AEDPA's protection for state court decisions to be conditioned on the state court's widening, or enlarging, the rules made by Supreme Court decisions. To widen the scope of or to enlarge Supreme Court rules is not to follow "clearly established" Supreme Court law, but is to innovate. When judging an "unreasonable application" case, here is how we think AEDPA works.

If a state court can reach an objectively reasonable conclusion that the circumstances of the case before it are substantially different from the circumstances treated as material in the cases decided by the Supreme Court, the state court -- to acquire AEDPA's protection -- is not required to predict that the Supreme Court might widen its rule if the Supreme Court were faced with these new and substantially different circumstances. In this sense, the failure to extend -- that is to widen or to enlarge -- a Supreme Court rule can never be an "unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States." In this kind of situation, the state court's decision is filling a gap for which the Supreme Court (the state court can reasonably believe) has not yet determined the law.

By "substantially different circumstances" we mean differences which objectively reasonable judges could believe might make a difference on whether or not the Supreme Court's preexisting decisional principles laid down in one set of circumstances would apply to the new circumstances.

We stress that not every factual difference between a Supreme Court precedent and the case before a state court would carry the state case beyond the borders of the Supreme Court's decisional principle. But for example, if an objectively reasonable judge could believe a fact which was dispositive in the Supreme Court's rule-of-law-making decisions is absent from the state case, the state court is not obliged to extend -- or put differently to widen or enlarge -- the Supreme Court's rule to reach the new and substantially different circumstances presented in the state case. For AEDPA protection, a state court is not obliged to predict more or less accurately what the Supreme Court might do in circumstances, the likes of which objectively reasonable judges can believe the Supreme Court has never faced: in such state cases, no clearly established federal law exists on point that might be unreasonably applied for AEDPA purposes.

To have their decisions protected by AEDPA from federal court interference, the state courts need not be innovative or prophetic about the direction the Supreme Court will go and go there first. The state courts must fully, faithfully and reasonably follow legal rules already clearly established by the Supreme Court of the United States. The state courts cannot narrow

8

an unreasonable application of federal law under AEDPA. The refusal to extend the rule in Kennedy to the facts of this case was objectively reasonable.

The Kennedy rule covers prosecutorial misconduct which was intended to and did cause a mistrial. The Supreme Court said that, when a defendant moves for and is granted a mistrial, double jeopardy generally does not bar a later prosecution. But the Court recognized that, "even where the defendant moves for a mistrial, there is a narrow exception to the rule that the Double Jeopardy Clause is no bar to retrial." Kennedy, 102 S.Ct. at 2088. The Court noted that its earlier cases had not stated clearly the precise circumstances under which the exception would apply. Id. After discussing different statements of the rule, the Court concluded "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." Id. at 2089.

Goading conduct is a material fact treated by the Supreme Court as necessary for the Kennedy rule -- the rule prohibiting a second prosecution -- to apply. The Court noted that "[p]rosecutorial conduct that might be viewed as

_____

the Supreme Court's legal rules, but state courts are not obliged to widen the rules. Whatever AEDPA is or was intended to be, AEDPA is no Congressional command for activism in the state courts.

harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion [] does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." Id. Then the Court recognized that "language taken from [their] earlier opinions may well suggest a broader rule." Id. at 2090. But the Court concluded that a defendant, after a mistrial, could only successfully assert the defense of double jeopardy in "those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." Id. at 2091.

The Kennedy rule applies only to plain, unconcealed prosecutorial misconduct. The misconduct must not be secret if its purpose is to goad the defendant into moving for a mistrial. Unlike Kennedy, this case involved hidden misconduct. The prosecutor's conduct was concealed; the conduct was intended to obtain a conviction, not to push the defendant into moving for a mistrial before verdict. The prosecutor's misconduct in this case is materially different from that described in Kennedy and is not -- to say the least -- clearly covered by the Kennedy rule.

But Hawkins argues, it is conceivable that a prosecutor, believing that the trial is going badly, could attempt to subvert double jeopardy through covert misconduct. If double jeopardy protections do not apply, prosecutors (Hawkins

10

argues) could do whatever is necessary to avoid an acquittal, confident that if they are ever caught they will be able to retry the defendant.  He contends that the reasoning of Kennedy could, and should, be extended -- by which he means widened and enlarged -- to situations where the prosecutor commits misconduct with the intent to avoid an acquittal when the prosecutor thinks acquittal is likely.  While this policy argument might seem to have some debatable force, we can readily say that its conclusion is not compelled by Kennedy.[4]

In arguing for this extension, Hawkins cites to four cases from other circuits that discuss the possibility of extending Kennedy.  See United States v. Wallach, 979 F.2d 912 (2d Cir. 1992); United States v. Pavloyianis, 996 F.2d 1467 (2d Cir. 1993); United States v. Doyle, 121 F.3d 1078 (7th Cir. 1997); United States v. Catton, 130 F.3d 805 (7th Cir. 1997).  None of these decisions involve state convictions or AEDPA considerations.  So, they are inherently not very useful in a case controlled by AEDPA.

Hawkins's reliance on these cases is misplaced.  Under AEDPA, we can only set aside a state court's decision if it "was contrary to, or involved an

---

[4] By the way, courts have a variety of other effective means with which to deal with overzealous prosecutors who commit misconduct.  The extreme sanction of prohibiting a retrial -- with its negative costs to society if the defendant is, in fact, guilty of the crime -- is not the only way to discourage this kind of bad behavior.  That barring prosecutions has significant, hurtful side effects for society is an element that cuts against the idea that Kennedy's rule clearly must be extended to other cases with important circumstances that are not close to those described in Kennedy.

11

unreasonable application of, clearly established Federal law, <u>as determined by the</u> <u>Supreme Court of the United States</u>." 28 U.S.C. § 2254 (d)(1) (emphasis added). Our inquiry into what is clearly established federal law for AEDPA purposes must focus on the decisions of the Supreme Court. "'Clearly established federal law is <u>not</u> the case law of the lower federal courts, including this Court.' Instead, in the habeas context, clearly established federal law 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court[].'" <u>Hall v. Head</u>, 310 F.3d 683, 691 (11th Cir. 2002) (citations omitted)(emphasis in original).

The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them. The Seventh and Second Circuit cases cited by Hawkins do not reach this kind of conclusion about the Supreme Court's preexisting precedent dictating the circuit's decision. These cases, therefore, are not helpful to our AEDPA analysis.[5]

---

[5] The Seventh and Second Circuits indicate that they might widen the reach of <u>Kennedy</u>. This widening is not described by them as one that is truly compelled by the <u>Kennedy</u> rule. Instead, they indicate that <u>Kennedy's</u> rule might be widened to reach other circumstances than those contemplated by <u>Kennedy</u>. The inclination to widen <u>Kennedy</u> represents an independent judgment by these circuits on what the law ought to be in the circumstances contemplated by those circuit courts in those cases.

The important facts of Hawkins's case are substantially different from those in <u>Kennedy</u>. The Supreme Court has not contemplated extending <u>Kennedy</u> to cases like Hawkins's case. And, very important, the Court has seemingly foreclosed this kind of extension. Hawkins's first trial ended in a conviction, not a mistrial. The Supreme Court has said "if the first trial has ended in a conviction, the double jeopardy guarantee 'imposes no limitations whatever upon the power to retry a defendant who has succeeded in getting his first conviction set aside.'" <u>United States v. DiFrancesco</u>, 101 S.Ct. 426, 434 (1980). Only one exception to this rule has been recognized by the Supreme Court, "the Double Jeopardy Clause prohibits retrial after a conviction has been reversed because of insufficiency of the evidence." <u>Id.</u> The <u>Kennedy</u> Court specifically recognized this rule and did not question its force. <u>Kennedy</u>, 102 S.Ct. at 2090 n.6. <u>DiFrancesco</u> seems to preclude extending the <u>Kennedy</u> rule to cases like Hawkins's case: cases that end in a conviction.

The Alabama Court of Criminal Appeals's decision not to extend the <u>Kennedy</u> rule was a reasonable application of clearly established federal law; it was consistent with Supreme Court precedent. The Supreme Court has never decided or even hinted that the <u>Kennedy</u> rule applies to the kind of prosecutorial misconduct underlying the present case. Under AEDPA, state courts are not

13

obliged to widen the legal principles laid down by the Supreme Court. In addition, given DiFrancesco, the Kennedy rule is a highly limited one. Alabama's courts were free to decide the federal constitutional issue as they did, given the lack of a preexisting, clear Supreme Court rule dictating the opposite conclusion.

We stress that we are today deciding nothing about whether, if faced with identical facts in a case on direct review (or perhaps § 2255 appeal), we would extend Kennedy beyond the goaded-mistrial context. That kind of case is not before us. This case is a habeas corpus case to be decided in the light of AEDPA. Our review is limited to whether the state court's decision was objectively unreasonable in the light of clearly established federal law. Williams, 120 S.Ct. at 1521. Even if we believed that the Alabama Court of Criminal Appeals reached an incorrect conclusion and we believed that Kennedy should apply in circumstances like these, the Supreme Court reminds us that "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 1522. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id.

Congress through AEDPA has limited the ability of federal courts to grant a

14

writ of habeas corpus.  We are limited to those cases where the state court reached a decision that was contrary to, or an unreasonable application of, clearly established federal law as set out by the Supreme Court.  This case is not one of those cases.  The federal courts, under AEDPA, lacked the authority to interfere with the Alabama conviction.  The district court's order is vacated, and we remand with instructions to deny Hawkins's petition.

VACATED and REMANDED.