

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-28-2005

# Wilkerson v. Klem

Precedential or Non-Precedential: Precedential

Docket No. 03-2842

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Wilkerson v. Klem" (2005). *2005 Decisions.* Paper 907.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/907

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL


IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

———————

NO. 03-2842

———————


MELVIN E. WILKERSON,
Appellant


v.


EDWARD KLEM;
ATTORNEY GENERAL OF PENNSYLVANIA


———————


On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civil Action No. 01-cv-01501)
District Judge:  Hon. James M. Munley

———————


Argued December 14, 2004

BEFORE:  AMBRO, VAN ANTWERPEN and
STAPLETON, Circuit Judges

(Opinion Filed: June 28, 2005)

————

Mary Gibbons, Esq. (Argued)
600 Mule Road
Holiday Plaza III
Toms River, NJ  08757
 Attorney for Appellant

James P. Barker, Esq. (Argued)
Francis T. Chardo, Esq.
Deputy District Attorney
Dauphin County Courthouse
Front & Market Streets
Harrisburg, PA  17101
 Attorney for Appellee

————

OPINION OF THE COURT

————

STAPLETON, Circuit Judge:

In this habeas corpus proceeding brought pursuant to 28 U.S.C. § 2254, Appellant Wilkerson claims that the state trial

court wrongfully deprived him of his Sixth Amendment right to counsel. The District Court considered whether the state court's decision rejecting that claim was contrary to, or an unreasonable application of, Supreme Court precedent and concluded that it was not. We agree and will affirm.

## I.

Wilkerson was charged in a Pennsylvania court with retail theft and robbery of a motor vehicle. At a March 16, 1998, hearing, he informed the court that he wanted his current counsel to "step down," and the court allowed counsel to withdraw. App. at 42-43. It then set April 13, 1998, as Wilkerson's trial date and advised him as follows:

> Now, Mr. Wilkerson, that's your new trial date. That's less than 30 days. You can't get a lawyer on April 12 and expect him to know how to handle your case the next day. You need to get a lawyer within the next several days so that that lawyer will have an opportunity to engage in discovery with the District attorney, to evaluate your case, interview witnesses, interview you, and that takes a lot of time. There isn't much time.
>
> So we will proceed with your trial on April the 13th. You or your family has to get busy and hire a lawyer within the next several days.
>
> I guess I ought to also tell you that if you can't afford private counsel, you have the right to the

3

> free services of the Public Defender's Office. So
> if you can't come up with the money, I would say
> by the end of this week, you'd better be going to
> the Public Defender then right away.

App. at 45-46.

Wilkerson appeared on April 13, 1998, without counsel for the charges to be tried that day, although an attorney from the Public Defender's Office who was representing him on another charge happened to be present. Wilkerson advised the court that his family was in the process of trying to engage a lawyer, but he had not yet heard whether they had been successful. The court decided to proceed to trial and appointed the attorney from the Public Defender's Office as stand-by counsel to assist Wilkerson in his self-representation. The court explained its decision as follows:

> I made it very clear to you when we continued
> this case last term in March when Mr. Dils was
> standing by your side, that you would need new
> counsel.
>
> * * *
>
> You knew this case was coming up today. You
> knew you needed an attorney, and I don't know
> why you didn't apply for one.
>
> We're not going to delay the system, delay justice,
> and inconvenience witnesses while you fool

4

around in deciding to get an attorney or not.

It doesn't make any sense that your family is looking for a lawyer for you on one charge, and at the same time you're applying for a public defender in another case. You can afford counsel or you can't.

If you can't afford counsel, you should have gone to the Public Defender's Office for this charge as well as the other. I think you'd qualify since you're under a state prisoner sentence right now, but be that as it may, we're taking this case to trial.

App. at 52-53.

Following his conviction, Wilkerson appealed to the Superior Court of the Commonwealth of Pennsylvania, arguing *inter alia* that he had been denied his right to counsel. The Superior Court affirmed, concluding that Wilkerson had "forfeited" his right to counsel. In the court's view, Wilkerson's case was governed by *Commonwealth v. Wentz*, 421 A.2d 796 (Pa. Super. Ct. 1980), where it had held as follows:

". . . a criminal defendant who has been duly notified of the date of his trial, and who has been advised to obtain counsel to represent him and who, nevertheless, appears in court on the scheduled date without counsel and with no reasonable excuse for the lack thereof and no

5

> concrete plans for the obtaining of counsel has
> waived his right to counsel."

App. at 36 (*quoting Wentz*, 421 A.2d at 800). While the Superior Court quoted this passage from *Wentz* cast in terms of "waiver," it made clear that this was a case in which the defendant had forfeited his right to counsel by his conduct and not one involving a voluntary waiver of that right.

The Supreme Court of Pennsylvania declined to review Wilkerson's case. The District Court denied him habeas relief, and we granted a certificate of appealability only on the issue of whether Wilkerson had been denied his right to counsel.

II.

Under provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d)(1), habeas corpus relief from a state conviction may be granted only if the state court decision being challenged "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court clarified these two bases for invalidating a state conviction on habeas review. It held that "contrary to . . . clearly established federal law" means just that – "diametrically different, opposite in character or nature, or mutually opposed." *Id*. at 405. Moreover, the state court judgment must not merely be contrary to law as articulated by any federal court. It must contradict "clearly established" decisions of the United States

6

Supreme Court alone.[1] *Id*. This can happen in one of two ways: either the state court ignores or misapprehends clear precedent or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Id*. at 406.

The Court in *Williams* further explained that an "unreasonable application" of Supreme Court precedent occurs when a state court applies the correct rule to specific facts in an objectively unreasonable way. *Id*. at 409; *see also Mitchell v. Esparza*, 540 U.S. 12, 17-18 (2003). A court that unreasonably extends an established rule to a new context where it should not apply or, in the alternative, unreasonably fails to extend such a rule to a new context where it should apply may be deemed to have unreasonably applied the correct rule. *Williams*, 529 U.S. at 407.

These governing rules were recently applied by our Court in a context similar to this one in *Fischetti v. Johnson*, 384 F.3d 140 (3d Cir. 2004). There, a state court denied Fischetti's motion for the appointment of new counsel, finding that the previously appointed counsel was providing effective

---

[1]At the end of the day, AEDPA "confines the authorities on which federal courts may rely" in a habeas case to Supreme Court decisions. *Lewis v. Johnson*, 359 F.3d 646, 652 (3d Cir. 2004); *see also Dunn v. Colleran*, 247 F.3d 450, 457 (3d Cir. 2001); *Hameen v. Delaware*, 212 F.3d 226, 234-43 (3d Cir. 2000) (analyzing Supreme Court cases).

representation. The court gave Fischetti three options: continue to trial with present counsel representing him, represent himself with present counsel assisting as co-counsel, or represent himself without co-counsel. When Fischetti declined all three options, the court ordered the trial to go forward with Fischetti representing himself. Following conviction and direct appeal, Fischetti sought habeas relief in the federal courts.

On appeal from the District Court's dismissal of his habeas petition, this Court began its analysis by cautioning that "at the outset, we must articulate the issue presented to the state court precisely." *Id*. at 150. It then framed the issue as whether Fischetti, by his conduct, had forfeited his Sixth Amendment right to counsel:

> Here, Fischetti refused to make a choice between proceeding with current counsel and proceeding pro se. Effectively, he sought to defeat the trial court's denial of his motion for yet another new counsel. In essence, the state court treated him not as if he had waived the right to his attorney but as having forfeited that right. *See Goldberg*, 67 F.3d at 1101-01. We must therefore examine whether there is "clearly established" Supreme Court law on forfeiture of the right to counsel.

*Id*. at 150.

Having thus defined the issue, we quickly concluded that the state court's ruling was not "contrary to . . . clearly established" Supreme Court law within the meaning of 25

U.S.C. § 2254(d)(1):

> [T]he Court's established precedent in this area has not expressly dealt with the matter of forfeiture of counsel, which is the exact issue here. As we have discussed, forfeiture and voluntary waiver are conceptually separate. Moreover, the Supreme Court's prior decisions have not involved facts that are "materially indistinguishable" from the facts surrounding Fischetti's actions in this case. *See Williams*, 529 U.S. at 406, 120 S.Ct. 1495; *Moore*, 255 F.3d at 107. It follows that the state court ruling here was not contrary to federal law as articulated by decisions of the Supreme Court.

*Id.*

We then turned to the issue of whether the state court had unreasonably applied Supreme Court precedent. Based primarily on Supreme Court cases involving the constitutional right to self-representation,[2] we predicted that the Supreme Court would hold that Fischetti had not forfeited his right to counsel. We indicated that, if we were reviewing a federal conviction, we would rule that the trial court erred in not directing the trial to go forward with him being represented by his then present counsel. We stressed, however, that this was not a permissible approach in reviewing a state court conviction:

---

[2]*See, e.g., Martinez v. California*, 528 U.S. 152, 161 (2002).

> [I]f our rule on habeas review were to determine if the state judge properly extrapolated the general principles that can be derived from *Faretta, Patterson,* and *Martinez* to this different factual setting, we might disagree with the state court ruling.
>
> That is not our role. In reviewing the reasonableness of the state courts' application of Supreme Court precedent, we must use as our point of departure the specific holdings of the Court's decisions. When assessing whether the state court acted reasonably in applying or refusing to apply that precedent, we must be mindful that the issue is whether Supreme Court law "dictated" a result in our case, *Teague*, 489 U.S. at 301, 109 S.Ct. 1060 (plurality); *see Moore*, 255 F.3d at 104-05, or whether the circumstances presented here were "closely analogous" to those that formed the basis of earlier high court decisions, *Penry*, 492 U.S. at 314, 109 S.Ct. 2934 (internal quotations and citations omitted).

*Id.* at 150-51.

Once our analysis in *Fischetti* was confined to "specific holdings" of Supreme Court decisions and to asking whether those holdings and "closely analogous" circumstances compelled a result contrary to that reached by the state court, we could find no Supreme Court precedent that could be fairly cited

10

as rendering the state court's decision unreasonable. We noted that "the Supreme Court [had not] expressly ruled out forfeiture of counsel." *Id.* at 151. On the contrary, we observed that the Supreme Court precedents, while not dealing with forfeiture of the right to counsel, provided a "basis to conclude, as the state judge did, that defiant behavior by a defendant can properly cost that defendant some of his Sixth Amendment protections if necessary to permit a trial to go forward in an orderly fashion." *Id.* at 151 (citing *Taylor v. United States*, 414 U.S. 17 (1974) (holding that, following failure of the defendant to return from recess, "the trial could continue because the court's power to try a case 'may not be defeated by conduct of the accused that prevents the trial from going forward'"); and *Illinois v. Allen*, 397 U.S. 337 (1970) (holding that, following disruptive behavior and after being warned by a judge, a defendant could be excluded from the courtroom to allow the trial to proceed)). We then went on to note that "additional support for the reasonableness of the state court's application of Supreme Court precedent" could be found in our own decisions and those of other Courts of Appeals. *Id.* at 151. We summarized that case law as follows:

> None of these cases approves the specific decision made by the trial judge here. But the appellate cases do establish that the Supreme Court's general right to counsel decisions are reasonably read as qualified by the trial court's power to remedy abuse of that right through forfeiture. Further, none of these cited appellate cases saw in the Supreme Court's precedents any clear guidance as to the precise standard to be

11

applied before forfeiture can be triggered. Put another way, the Supreme Court has not fully defined when a defendant's misconduct or defiance warrants a forfeiture. Our canvass of decisions of our own and sister courts reinforces our view that the state court order that Fischetti proceed without counsel was not an objectively unreasonable application of Supreme Court case law under the Sixth Amendment.

*Id*. at 152.

Applying the analysis and rationale of *Fischetti* to this case, we reach a similar conclusion. The precise issue presented to the state court in this case was whether a criminal defendant who has been duly notified of the date of his trial, who has been advised to obtain counsel in sufficient time to be ready for trial, and who appears on the scheduled date without counsel and with no reasonable excuse for his failure to have counsel present, forfeits his Sixth Amendment right to counsel.

Turning to the first prong of § 2254(d)(1), there is no Supreme Court precedent dealing with the forfeiture of counsel, and no prior decision of that Court involves facts "materially indistinguishable" from those presented here. Accordingly, the state court decision we review is not "contrary to . . . clearly established" Supreme Court law.

With respect to whether the decision we review involves an unreasonable application of clearly established Supreme Court law, we emphasize, as did the *Fischetti* Court, that "we

12

must use as our point of departure the specific holdings of the" Supreme Court. *Id.* at 151. It remains true that there are no Supreme Court decisions involving forfeiture of the right to counsel and *a fortiori* no decisions providing any clear guidance as to the "standard to be applied before [it can be concluded that] a defendant's misconduct warrants a forfeiture." *Id.* at 152. It necessarily follows that the state court's decision here was not an unreasonable application of Supreme Court precedent.

While, as we have noted, court of appeals precedent is irrelevant to the ultimate issue before us, we note that here, as in *Fischetti*, a review of those cases provides a basis for the view taken by the state court in this case. We explained in *Fischetti*, for example:

> In *United States v. Goldberg*, 67 F.3d 1092 (3d Cir. 1995), we explained that a defendant could lose the right to counsel by physically assaulting his attorney or <u>(in the case of a financially able defendant) refusing to retain any counsel in the first place. We apply this rule of forfeiture not to punish defendants but to preserve the ability of courts to conduct trials.</u>

\* \* \*

> Other circuits have also interpreted Supreme Court decisions to be consistent with forfeiture of the right to counsel. These cases have interpreted the law to require defendants to

13

go to trial unrepresented when they have failed to hire counsel within a reasonable time, *United States v. Bauer*, 956 F.2d 693 (7th Cir. 1992); *United States v. Mitchell*, 777 F.2d 248 (5th Cir. 1985).

*Id.* at l46, 152 (emphasis added).

Our colleague writing in dissent correctly observes that the "unreasonable application" segment of § 2254(d)(1) authorizes habeas relief from a state judgment "if, under clearly established [Supreme Court] law, the state court was unreasonable in refusing to extend a governing legal principle to a context in which the principle should have controlled" or unreasonably extended that principle to a situation in which it should not have controlled. *Ramdass v. Angelone*, 530 U.S. 156 (2000) (plurality opinion). Our colleague finds this significant because, in his view, Wilkerson did not engage in any "serious misconduct" or, more specifically, because "Wilkerson did not act in a way that our Supreme Court has held leads to a finding of forfeiture of constitutional rights generally or that the lower courts have subsequently held leads to a finding of forfeiture of the right to counsel specifically." Dissenting Op. at 10.

The dissent's analysis ignores the fact that the unreasonable extension doctrine still requires reference to a specific "legal principle from the Supreme Court." *Gattis v. Snyder*, 278 F.3d 222, 228 (3d Cir. 2002). No Supreme Court precedent exists to support the position that the type of "serious misconduct" described in the dissent is "necessary to find forfeiture of a constitutional right." Dissenting Op. at 13.

14

Indeed, our colleague concedes that no clear forfeiture standard can be found in Supreme Court precedent or in the decisions of lower appellate courts. *Id*. at 9. The dissent goes on, however, to express the belief that circuit court forfeiture decisions "contain common factors from which the principle *can be gleaned* that the federal appellate courts will not find a forfeiture absent a defendant's defiant behavior. . . ." *Id*. (emphasis added).

Even if this Court could glean from federal circuit court precedents a serious misconduct forfeiture standard which does not encompass Wilkerson's behavior in this case, that does not compel the conclusion that the state court's forfeiture finding was an objectively unreasonable application of Supreme Court precedent under section 2254. Because no clear forfeiture standard has been articulated by the Supreme Court, it cannot be said that the state court in this case acted unreasonably when it found forfeiture, even though Wilkerson's actions fell short of the sort of "extremely serious misconduct" that this Court found present in *United States v. Leggett*, 162 F.3d 237 (3d Cir. 1998), and *Goldberg*, 67 F.3d at 1102. It is not sufficient to say that Wilkerson's actions did not rise to the level of conduct that has constituted forfeiture in the past; the issue is whether the state court's application of forfeiture to Wilkerson's case was precluded by Supreme Court precedent. In this regard, we re-state our position in *Fischetti* that the Supreme Court's holdings in *Illinois v. Allen*, 397 U.S. 337 (1970), and *Taylor v. United States*, 414 U.S. 17 (1973), provide state courts with a "basis to conclude" that certain obstructive conduct by a defendant may constitute a forfeiture of Sixth Amendment protections. *Fischetti*, 384 F.3d at 151.

As we stressed in *Fischetti*, "forfeiture and voluntary waiver are conceptually separate," and the dissent's waiver precedents are beside the point. *Allen* and *Taylor* are of interest to the extent they recognize that a criminal defendant may forfeit other important constitutional rights by engaging in conduct that has the potential of "prevent[ing] the trial from going forward." *Fischetti*, 384 F.3d at 151. But the issue and facts involved there are no closer to those here than to those in *Fischetti*. They certainly do not compel a conclusion that a trial judge must abort a scheduled trial under the facts presented here.

With respect to whether or not the state court could reasonably apply the Supreme Court's forfeiture analysis from *Allen* and *Taylor* to Wilkerson's case, we perceive no material difference between the potential for trial disruption presented here and in *Fischetti*. Whether there is such a material difference might present a litigable issue – one on which reasonable minds could differ, but that would be relevant only to whether our panel is bound by *Fischetti*. It has nothing to do with whether the state court's decision was an unreasonable application of established Supreme Court law.

III.

The judgment of the District Court will be affirmed.

16

AMBRO, *Circuit Judge*, Dissenting

I agree with my colleagues in the majority that the Pennsylvania decision in this case was not *contrary to* clearly established federal law because there is no Supreme Court precedent addressing forfeiture of the right to counsel. However, I part with my colleagues on the issue of whether that decision—that Melvin Wilkerson forfeited his right to counsel—was *an unreasonable application of* Supreme Court precedent on forfeiture of constitutional rights. I believe that the state court unreasonably extended the Court's forfeiture precedent to Wilkerson's case instead of applying the appropriate analytical rubric—precedent on waiver of the right to counsel. I therefore respectfully dissent.

A.     *Unreasonable Extension of Forfeiture Precedent*

If we determine, as we have in this case, that a state court decision is not contrary to applicable Supreme Court precedent, we must "advance to the second step in the [*habeas*] analysis—whether the state court decision was based on an 'unreasonable application of Supreme Court precedent.'"[3] *Affinito v. Hendricks*, 366 F.3d 252, 257 (3d Cir. 2004) (quoting *Werts*, 228 F.3d at 196). This prong is met "'if the state court identifies the correct governing legal principle from [the Supreme] Court's decision but unreasonably applies that

---

[3]We have previously emphasized that the "contrary to" and "unreasonable application of" provisions of 28 U.S.C. § 2254(d)(1) must be given independent meaning. *Werts v. Vaughn*, 228 F.3d 178, 197 (3d Cir. 2000) (noting that this point was a focus of Justice O'Connor's portion of the plurality opinion in *Williams v. Taylor*, 529 U.S. 362 (2000)).

17

principle to the facts of the prisoner's case.'"  *Id.* (quoting *Williams*, 529 U.S. at 413).  As the majority opinion states, a state court decision may also be found to be an unreasonable application of Supreme Court precedent if "the state court either unreasonably extends a legal principle from the Supreme Court precedent to a new context where it should not apply or unreasonably fails to extend that principle to a new context where it should apply."  *Gattis v. Snyder*, 278 F.3d 222, 228, 234 (3d Cir. 2002) (citing *Williams*, 529 U.S. at 407).

The "unreasonable extension" or "failure to extend" approach to the unreasonable application prong of 28 U.S.C § 2254(d)(1) has not been fully fleshed out by the Supreme Court.  The Court stated in *Williams* that this approach, though "perhaps [] correct[,] . . . does have some problems of precision,"[4] and noted further that it was not required "to decide

---

[4]Regarding the "problems of precision" inherent in this approach, Justice O'Connor wrote:

> Just as it is sometimes difficult to distinguish a mixed question of law and fact from a question of fact, it will often be difficult to identify separately those state-court decisions that involve an unreasonable application of a legal principle (or an unreasonable failure to apply a legal principle) to a new context.  Indeed, on the one hand, in some cases it will be hard to distinguish a decision involving

18

how such 'extension of legal principle' cases should be treated under § 2254(d)(1)." 529 U.S. at 408–09 (discussing the Fourth Circuit's approach to the unreasonable application inquiry); *see also Marshall v. Hendricks*, 307 F.3d 36, 51 n.2 (3d Cir. 2002) (noting that the Supreme Court discussed but did not specifically endorse the "extension of legal principle" approach in *Williams*); *Fischetti v. Johnson*, 384 F.3d 140, 148 (3d Cir. 2004) (stating that the "Supreme Court has not fully fleshed out this 'extension of legal principle' approach").

Soon after *Williams* was decided, however, Justice Kennedy articulated the governing principles for analyzing the unreasonable application prong of § 2254(d)(1) and stated: "A state determination may be set aside under this standard if, under clearly established federal law, the state was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled." *Ramdass v.*

---

an unreasonable extension of a legal principle from a decision involving an unreasonable application of law to facts. On the other hand, in many of the same cases it will also be difficult to distinguish a decision involving an unreasonable extension of a legal principle from a decision that arrives at a conclusion opposite to that reached by this Court on a question of law.

*Williams*, 429 U.S. at 408 (internal quotation omitted).

19

*Angelone*, 530 U.S. 156, 166 (2000) (plurality opinion). Our Court and all but one of our sister Circuits have since indicated—or expressly held—that the "extension of legal principle" approach to the unreasonable application prong of the *habeas* inquiry is a viable mode of analysis. *See, e.g., Brinson v. Vaughn*, 398 F.3d 225, 232 (3d Cir. 2005) (stating that "'a state court decision fails the 'unreasonable application' prong . . . if . . . the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply.'" (quoting *Rico v. Leftridge-Byrd*, 340 F.3d 178, 181 (3d Cir. 2003) (internal quotation omitted))); *Gibbs v. Frank*, 387 F.3d 268, 272, 275 (3d Cir. 2004) (same); *see also Jackson v. Coalter*, 337 F.3d 74, 81 (1st Cir. 2003) (same); *Kennaugh v. Miller*, 289 F.3d 36, 45 (2d Cir. 2002) (noting that *Williams* and *Ramdass* left open the question whether a state court's failure to extend clearly established Supreme Court precedent could constitute an unreasonable application of clearly established federal law and holding that it could); *Tucker v. Catoe*, 221 F.3d 600, 605 (4th Cir. 2000) (stating that the unreasonable application prong is met if the state court decision unreasonably extends or unreasonably fails to extend Supreme Court precedent to a new context); *Young v. Dretke*, 356 F.3d 616, 623 (5th Cir. 2004) (same); *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005) (same); *Owens v. Frank*, 394 F.3d 490, 497 (7th Cir. 2005) (same); *Moore v. Purkett*, 275 F.3d 685, 688 (8th Cir. 2001) (same); *Kesser v. Cambra*, 392 F.3d 327, 336 (9th Cir. 2004) (same); *Carter v. Ward*, 347 F.3d 860, 864 (10th Cir. 2003) (same); *but see Hawkins v. Alabama*, 318 F.3d 1302, 1307 & n.3, 1309 (11th Cir. 2003) (holding that "the question of when

20

a state court's refusal to extend a legal principle would constitute, under AEDPA, an unreasonable application of federal law comes to us unsettled," but that "[t]he refusal to extend [the precedent at issue] to the facts of this case was objectively reasonable" and noting, in a lengthy discussion of the "extension of legal principle" approach, that state courts are not required to widen or enlarge rules from Supreme Court precedent in order for their decisions to be found objectively reasonable).

I believe that this case presents us with an opportunity to apply the "unreasonable extension" approach that has been oft-stated (but little used) by our Court and the other Courts of Appeal because, in my view, the Commonwealth court here unreasonably extended principles from the Supreme Court's forfeiture precedents to a new context where they should not apply—*i.e.*, a situation where the defendant had not engaged in any serious misconduct or disruption of proceedings. The Supreme Court has twice held that, in certain situations, a criminal defendant may forfeit constitutional rights. *See Illinois v. Allen*, 397 U.S. 337 (1970) (forfeiture of the right to be present at trial); *Taylor v. United States*, 414 U.S. 17 (1973) (per curiam) (same). Both of those cases involved defendants who, through their misconduct, disrupted the orderly proceeding of their trials.

In *Allen*, the Court held that a defendant who had repeatedly engaged in unruly behavior during his trial (including threatening to turn the judge into a "corpse" and making other abusive remarks, throwing his attorney's files on the floor, and arguing with the judge), despite warnings from the judge that such behavior would result in the defendant's removal from the courtroom, had "lost his Sixth and Fourteenth Amendment

21

rights to be present throughout his trial." 397 U.S. at 339–40, 346. In *Taylor*, the Court determined that a defendant who had mysteriously, though voluntarily, disappeared from his trial had "effectively waived" his right to be present even absent a warning from the trial judge that the trial would proceed in his absence. 414 U.S. at 17, 20. The Court emphasized that "[p]etitioner had no right to interrupt the trial by his voluntary absence." *Id.* at 20. The legal principle to be drawn from these precedents is that forfeiture of a constitutional right will not be found absent defiant behavior on the part of a criminal defendant that may disrupt the trial.

As stated by the majority opinion, our Court has relied on the above precedents as touchstones in upholding, on *habeas* review, a state court decision that a criminal defendant had forfeited his Sixth Amendment right to counsel, as has the Court of Appeals for the Second Circuit. *See Fischetti*, 384 F.3d at 150, 153 (holding that the state court's conclusion that defendant had forfeited his right to counsel was neither contrary to nor an unreasonable application of clearly established federal law); *Gilchrist v. O'Keefe*, 260 F.3d 87, 97, 100 (2d Cir. 2001) (same). We determined in *Fischetti* (in an opinion that I joined) that *Allen* and *Taylor*, taken together, "certainly provide a basis to conclude . . . that *defiant behavior* by a defendant can properly cost the defendant some of his Sixth Amendment protections *if necessary to permit trial to go forward in an orderly fashion*." *Fischetti*, 384 F.3d at 150 (emphases added); *see also Gilchrist*, 260 F.3d at 97 (concluding that *Allen* and *Taylor* "stand for the proposition that, even absent a warning, a defendant may be found to have forfeited certain trial-type constitutional rights *based on certain types of misconduct*" (emphasis added)). Thus, both the *Fischetti* and *Gilchrist*

22

decisions recognized that the Supreme Court's forfeiture precedents involved a common factor—misconduct on the part of the defendant. Neither Court, however, gave any indication that it would uphold a finding of forfeiture, even on our limited § 2254 *habeas* review, when there was no "defiant behavior" on the defendant's part.

In *Fischetti*, which my colleagues in the majority believe controls our decision in this case, the defendant, who was represented by his third court-appointed counsel, decided on the eve of trial that he was unwilling to proceed with that counsel but was also unwilling to represent himself. 384 F.3d at 145. After determining that the defendant's complaints about his counsel were "unfounded," the trial judge refused to appoint new counsel, and the defendant was forced to go to trial without an attorney even though he had not been advised of the consequences of self-representation. *Id.* at 145–46. Our opinion in *Fischetti* noted that this behavior "was part of a pattern of uncooperative conduct through which Fischetti repeatedly complained about counsel and sought to delay or derail his second trial." *Id.* at 145. In the context of our determination that the state court's decision that the defendant had forfeited his right to counsel was not contrary to nor an unreasonable application of clearly established federal law, we emphasized the defendant's "obduracy" and the fact that "[t]his was *not* a circumstance in which Fischetti was simply forced to go to trial without counsel or where he received an inadequate waiver hearing . . . ." *Id.* at 150–151 (emphasis added). Moreover, in *Gilchrist*, the Second Circuit explicitly stated that "the lack of Supreme Court precedent specifically addressing forfeiture of the right to counsel does not mean that any determination that such a fundamental right has been forfeited, even if based on an

23

utterly trivial ground, would survive habeas review." 260 F.3d at 97.

The view that a criminal defendant must have engaged in some relatively serious misconduct, or have acted to delay or otherwise disrupt his or her trial, in order to be found to have forfeited his or her right to counsel is supported by the holdings of our Court and our sister Circuits in direct review cases raising this issue.[5] In *United States v. Goldberg*, 67 F.3d 1092 (3d Cir. 1995), we surveyed Supreme Court and federal appellate precedent regarding forfeiture, particularly forfeiture of the right to counsel, and found that "because of the drastic nature of the sanction, forfeiture would appear to require extremely dilatory conduct." *Id.* at 1101. We later applied this standard in *United States v. Leggett*, 162 F.3d 237 (3d Cir. 1998), and held that a defendant's unprovoked physical attack on his attorney "qualifie[d] as the sort of 'extremely serious misconduct' that amounts to the forfeiture of counsel." *Id.* at 250 (quoting *Goldberg*, 67 F.3d at 1102)). *Accord United States v. Thomas*, 357 F.3d 357, 363 (3d Cir. 2004) (holding that defendant forfeited right to counsel when he threatened and orally abused counsel, forced the filing of meritless claims, and refused to cooperate with counsel in "relationships with four attorneys.").

---

[5]"In determining whether a state decision is an unreasonable application of Supreme Court precedent, this [C]ourt has taken the view that decisions of federal courts below the level of the United States Supreme Court may be helpful to us in ascertaining the reasonableness of states' application of clearly established Supreme Court precedent." *Fischetti*, 384 F.3d at 149.

Other federal courts have held that defendants forfeited their right to counsel when an attorney's allegation that the defendant threatened to kill him was undisputed, *United States v. Thompson*, 335 F.3d 782, 785 (8th Cir.2003), when the defendant's behavior was "repeatedly abusive, threatening, and coercive," *United States v. McLeod*, 53 F.3d 322, 326 (11th Cir. 1995), when the defendant "stubborn[ly] refus[ed]" to pay to retain counsel even when he could afford to do so, *United States v. Bauer*, 956 F.2d 693, 695 (7th Cir. 1992), and when defendants failed to retain counsel within a reasonable time where their insistence on counsel of their choice was "used as a device to manipulate or subvert the orderly procedure of the court." *United States v. Mitchell*, 777 F.2d 248, 257–58 (5th Cir. 1985) (holding that district court did not abuse its discretion in forcing defendants to proceed to trial unrepresented when they "requested [a] continuance in bad faith and for the purpose of delay" and when one defendant attempted "to manipulate the court's schedule by retaining an attorney he knew to have a conflict.").

I recognize that in *Fischetti* we characterized the above precedents (specifically *Leggett*, *McLeod*, *Bauer*, and *Mitchell*) as not providing "any clear guidance as to the precise standard to be applied before forfeiture can be triggered." 384 F.3d at 152. Upon further review, I continue to agree that these cases do not create a bright-line rule as to when the federal courts will find that a criminal defendant has forfeited a constitutional right, particularly the right to counsel. However, these cases do contain common factors from which the principle can be gleaned that the federal appellate courts will not find a forfeiture absent a defendant's defiant behavior—whether it took the form of physical abuse or of attempts to delay and manipulate the

25

judicial system. *See, e.g., Goldberg*, 67 F.3d at 1094–96, 1102 (declining to hold that defendant, who had asked for a continuance to obtain new counsel and appeared to be attempting to manipulate his right to counsel to delay his trial, forfeited that right because he had not engaged in the type of "extremely serious misconduct" that would warrant a forfeiture finding); *United States v. Meeks*, 987 F.2d 575, 579 (9th Cir. 1993) (holding that district court erred by presuming a waiver of the right to counsel and forcing a defendant, who had attempted to change counsel several times, to represent himself at trial because the trial court, not the defendant, was in control of whether the defendant continued to be represented by counsel).

Here, Wilkerson simply did not act in a way that our Supreme Court has held leads to a finding of forfeiture of constitutional rights generally or that the lower federal courts have subsequently held leads to a finding of forfeiture of the right to counsel specifically. The facts of this case are aptly summarized in the majority opinion. They demonstrate that the only conduct on Wilkerson's part that could conceivably be characterized as "defiant behavior" or "misconduct" was his failure to secure counsel by his trial date as he was instructed to do by the trial judge. There is, however, no evidence in the record (other than pure speculation by the trial judge) that Wilkerson failed to obtain an attorney by that date in a deliberate effort to delay the trial or manipulate proceedings in any way. To the contrary, Wilkerson represented to the trial judge that his family was in the process of obtaining counsel for him and that this had been delayed because it was difficult for him to make phone calls from prison. The record shows that Wilkerson was attempting to comply with the judge's order, not seeking to defy it.

26

In light of these facts, I conclude that the Pennsylvania court unreasonably extended clearly established Supreme Court precedent on the forfeiture of constitutional rights to a context in which it should not apply—*i.e.*, a situation in which there is *no* evidence of any misconduct on Wilkerson's part. Although the Court has not spoken directly on forfeiture of the right to counsel, the above survey of federal appellate case law reveals that the lower federal courts have interpreted the Supreme Court's more general forfeiture precedent as being applicable only to situations where the defendant has actively engaged in certain types of misconduct. The Supreme Court cases themselves—*Allen* and *Taylor*—involved defendants who had engaged in serious misconduct. Hence the extension of that precedent to this case was unreasonable.

## B.  *Application of Waiver Precedent*

I recognize that, in *habeas* review, we must look at the state decision under review with some specificity and compare it to Supreme Court precedent related to the particular factual setting of the case at issue. My colleagues in the majority hold that the existence of Supreme Court precedent regarding forfeiture of constitutional rights precludes the application of more general Supreme Court precedent regarding the fundamental right to counsel and waivers of that right. However, a corollary of my conclusion that the Pennsylvania court unreasonably extended current forfeiture precedent to Wilkerson's case is that those precedents were not the proper touchstone for the Commonwealth court to consider when determining whether Wilkerson's forced self-representation at trial constituted a violation of his constitutional rights. Rather, I believe that the Commonwealth court should have applied

27

Supreme Court precedent regarding waivers of the right to counsel.

The Supreme Court has held that the right to counsel is fundamental, *Gideon v. Wainwright*, 372 U.S. 335, 343 (1963), and has long recognized that "courts indulge every reasonable presumption against waiver of constitutional rights and . . . do not presume acquiescence in the loss of fundamental rights." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (internal quotation omitted). Supreme Court precedent therefore requires that "[a]lthough a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice will be made with eyes open." *Faretta v. California*, 422 U.S. 806, 835 (1975) (internal quotation omitted); *see also Iowa v. Tovar*, 541 U.S. 77, 81 (2004) ("Waiver of the right to counsel, as of constitutional rights in the criminal process generally, must be a 'knowing, intelligent ac[t] done with sufficient awareness of the relevant circumstances." (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970))).

Wilkerson did not knowingly or voluntarily waive his right to counsel in this case. He vehemently protested against representing himself both before the trial judge forced him to go to trial *pro se* with only standby counsel for assistance and during the trial itself. *See, e.g.,* App. at 65–66 ("I want to make this a matter of record right now, that I don't agree to this, okay? This representing myself. I don't agree to this. I'm ignorant to the fact. I'm not a lawyer. I don't know what's going on, and this is not right."); App. at 139 ("You know I don't know what I'm doing. I'm forced to do this. I'm naive of the whole

process.").

Moreover, even assuming that some sort of waiver took place, the trial judge also did not adequately warn Wilkerson of the consequences of waiving the right to counsel. Although he told Wilkerson that it was important for him to obtain a lawyer quickly so that the lawyer could prepare for trial, he did not inform Wilkerson of the dangers of self-representation. Thus, the judge's decision to force Wilkerson to represent himself at trial in the face of his repeated protests, and without ensuring that Wilkerson understood the consequences of any waiver, violated his constitutional right to counsel.

In upholding the trial judge's decision, the Pennsylvania court, far from indulging every reasonable presumption against waiver, leapt to the conclusion that Wilkerson had forfeited his right to counsel. That decision was not only an unreasonable extension of forfeiture precedent but was also contrary to, and an unreasonable application of, Supreme Court precedent on waiver of the right to counsel. Although that precedent may be characterized as more general than the Court's forfeiture holdings, it is nevertheless applicable here as it is the precedent that most closely deals with the factual situation with which we are presented.

\* \* \* \* \*

To summarize, I would grant Wilkerson's *habeas* petition because I believe that this case does not have the element of defiant behavior or misconduct that is necessary to find forfeiture of a constitutional right and thus the Pennsylvania court unreasonably extended forfeiture principles to a new context where they should not apply. The right to counsel is one of the cornerstones of our criminal justice system and, even on *habeas* review, we should not lightly uphold state court

decisions that find that this fundamental right has been forfeited without a searching inquiry into whether general forfeiture precedent has been reasonably extended to the particular case at issue. *See Gilchrist*, 260 F.3d at 97. In stark contrast to *Fischetti*, this *is* a case where Wilkerson was simply forced to go to trial without counsel. *Cf. Fischetti*, 384 F.3d at 150–51. The Court's forfeiture precedent was unreasonably applied in *lieu* of its waiver precedent, and I believe that Wilkerson would also be entitled to *habeas* relief even if that precedent had been applied. Thus I respectfully dissent.